Gray *v.* Maryland Credit Finance Corporation, Appellant.

Argued October 1, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Harold R. Gill,* with him *Edward D. McLaughlin,* for appellant.

*Martin F. Hatch,* for appellee.

OPINION BY RHODES, J., February 28, 1942:

Plaintiff brought an action in trespass against defendant to recover damages for an alleged conversion of an automobile. The trial judge refused defendant's request for binding instructions, and the jury rendered a verdict in favor of plaintiff. Defendant's motion for judgment n.o.v. was dismissed and judgment entered on the verdict. Defendant has appealed, and assigns this action of the court below as error.

On December 2, 1937, plaintiff went to the place of business of Clarke-Shuman Co., a dealer in automobiles, in Darby, Pa., to negotiate for the purchase of an automobile. She selected a 1937 model. Plaintiff at that time was the owner of a 1934 model automobile which she gave to the dealer together with $20 in cash. The price agreed upon for the 1937 automobile was $550. Added to this was the finance charges, making a total of $632.98. Plaintiff, on the same day, executed a bailment lease for the 1937 automobile to the dealer, whereby she agreed to pay a total rental of $632.98, of which $145, made up of her 1934 model automobile and the $20 in cash, was the first payment; the balance was to be paid monthly. At the same time, she executed a promissory note to the dealer in the sum of $487.98, like-

wise payable in monthly installments as provided in the lease. Plaintiff also paid to the dealer the sum of $2.50 covering the fee for transfer of title to the 1937 automobile to her, for which she received a receipt.

On the same day, the dealer assigned to defendant the bailment lease and all its right, title, and interest in and to the property therein described. The promissory note was also endorsed over to defendant. Defendant also on that day gave its check to the dealer in the sum of $405, which represented the balance due on the bailment lease and on the promissory note, less defendant's finance charges of $82.98.

Some time before this transaction on December 2, 1937, the 1937 automobile in question had been sold by the dealer, and defendant had financed the latter transaction. In November, 1937, defendant had repossessed the automobile and acquired title in its own name. The dealer, by contract dated February 27, 1937, had agreed to repurchase from defendant any automobile originally sold by it and financed by defendant which defendant might be required to repossess. After having repossessed the automobile, defendant delivered it to the dealer in whose possession it remained until December 2, 1937. Plaintiff had no knowledge or notice at the time of this arrangement between defendant and the dealer.

On December 2, 1937, the dealer paid defendant for the automobile in accordance with the repurchase agreement. Defendant thereupon assigned the certificate of title to the dealer under date of December 2, 1937, on a form supplied by the Department of Revenue. The dealer made application on the same form for certificate of title, which was executed on December 4, 1937. Under date of December 14, 1937, the dealer reassigned title to plaintiff, who, on the same day, made application for a certificate of title, subject to defendant's lien of $487.98, and application for registration plates.

The dealer failed to forward those papers to the Department of Revenue in order that the transfer of title might be consummated. In March, 1938, plaintiff complained to defendant that she had not received her registration plates. Defendant then secured the title papers from the dealer, and communicated with plaintiff. The transfer of title was subsequently completed, and plaintiff secured and accepted the registration plates on April 2, 1938. Without plates plaintiff was necessarily deprived of the use of the automobile. After she received the plates she requested defendant to change the terms of the lease so that the payments made would date from April 2, 1938. She admits that defendant refused to do this and insisted that payments be made in accordance with the terms of the lease as executed. She made two rental payments thereafter. In February, 1938, at plaintiff's request, the lease was modified to provide for payments of rental on the 25th of each month instead of the 15th. Plaintiff paid installments of rental on December 30, 1937, January 26, 1938, April 27, 1938, and May 27, 1938. The amount of each installment paid in January, April, and May was $34.61, which was the monthly installment payable after the December payment of $15. No further payment was made. In October, 1938, plaintiff was in arrears six months in her payments due under the lease, and defendant thereupon took possession of the automobile.

The present action was then brought by plaintiff to recover damages for conversion by defendant. She also claimed exemplary damages in addition to compensatory damages for the alleged trespass; such damages have some times been awarded where there has been a wrongful seizure of a plaintiff's automobile (*Stone v. C. I. T. Corporation*, 122 Pa. Superior Ct. 71, 184 A. 674). But the jury's verdict did not exceed the value placed upon the automobile at the time it was repossessed by defendant.

The case seems to have been tried on the theory that

the determinative question was whether the relationship of principal and agent existed between defendant and the dealer, and that defendant was liable for the failure of the dealer to make the transfer of title if such was the relationship of the parties, and could not insist upon compliance by plaintiff with the terms of the bailment lease. It is impossible for us to reconcile plaintiff's alleged right to recover by the method pursued with (1) the result of her acts as disclosed by her own unquestioned evidence, and (2) the absence of proof of an unlawful taking and detention of the automobile by defendant.

It was in December, 1937, that plaintiff received possession of the automobile from the dealer after executing the bailment lease which she acknowledged was to be assigned to defendant; and she retained possession until it was repossessed in October, 1938, after her extended default. After she became aware that the dealer had failed to forward the papers for the transfer of title and for the issuance of the registration plates she brought about through defendant the filing of the title papers which had been executed in December, 1937, whereupon a new certificate of title and the registration plates were issued. She received the plates on April 2, 1938. She never made any move to repudiate or rescind the contract for the alleged breach; on the contrary, after she acquired the legal right to operate the automobile of which she had been temporarily deprived by the dealer's failure to act, and, after defendant's refusal to reform the contract or make a new one, she made payments in pursuance of the contract and accepted the benefits under it. See *Acetylene Light, Heat & Power Co. v. Smith,* 10 Pa. Superior Ct. 61, 65. We think plaintiff thereby affirmed the contract after she had full knowledge of the material facts of which she complains; she elected to treat the contract as still subsisting. Retention of possession of the automobile, acquiescence in the eventual transfer of title, acceptance

of the registration plates, and the payments of rental thereafter under the contract constituted an election by her to continue performance. 3 Williston on Contracts, Rev. Ed., §§684, 688, pp. 1971, 1983; Restatement of the Law, Contracts, §309.

In view of plaintiff's conduct in relation to the contract, we are of the opinion that the relationship between defendant and the dealer becomes immaterial, and that where the responsibility lies for failure to promptly forward the title papers makes no difference. Even if we assume that defendant was the principal and chargeable with the dealer's non-action, plaintiff could not set up the delay in the transfer of title and the receipt of registration plates as an excuse for her own subsequent non-performance after she had acknowledged by her acts the validity of her contract and her duty to continue to render performance. "The principle is general that wherever a contract not already fully performed on either side is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform, unless the right to retain the excuse is not only asserted but assented to": 3 Williston on Contracts, §688, p. 1983; Restatement of the Law, Contracts, §309.

Plaintiff was bound by her contract; she failed to perform; consequently, the automobile was repossessed by defendant, which in the event of default the contract permitted. We are unable to find in the record the slightest evidence of a wrongful or unlawful taking and detention of the automobile by defendant; and on no other basis could plaintiff recover in this action.

Assignments of error are sustained.

Judgment is reversed, and is here entered for defendant.