443 A.2d 284

**AGSCO EQUIPMENT CORPORATION, Appellant,**

v.

**BOROUGH OF GREEN TREE.**

**BOROUGH OF GREEN TREE,**

v.

**AGSCO EQUIPMENT CORPORATION and Anthony M. Lombardi, Appellants.**

Superior Court of Pennsylvania.

Argued April 29, 1981.

Filed Sept. 4, 1981.

Reargument Denied April 13, 1982.

Petition for Allowance of Appeal Denied June 16, 1982.

34

James R. Fitzgerald, Pittsburgh, for appellants.

Donald J. Lee, Pittsburgh, for appellee.

Before CERCONE, President Judge, and BROSKY and HOFFMAN, JJ.

PER CURIAM:

Appellant, Agsco Equipment Corporation, and appellee, Green Tree Borough, entered into a "Lease and Fill" Agreement which provided that Agsco would operate a landfill on property owned by the Borough. The contract stated that Agsco would operate the landfill for a period of three years and would pay the Borough rent in the amount of 35% of the gross income received by Agsco from the operation.

■ The Borough filed a complaint and petition seeking, inter alia, an accounting of all income from the landfill. In separate actions which have been consolidated in an equity proceeding,[1] both parties sought damages for alleged breaches of the contract and the Borough sought compensation for damages to the site. The chancellor found that Agsco and its President, Anthony M. Lombardi, had breached the contract. Specifically, the court found that both the corporation and the individual appellant, Lombardi, had concealed and withheld public funds and that the corporation had not

1. The initial requests of the parties for an injunction and an accounting are within the equitable jurisdiction of equity. The lower court opinion explains that no request was made by any party to sever the damage issues or to have a jury trial. If, as here, equity has jurisdiction of a case because of other remedies sought in the proceeding, there is nothing unusual or objectionable in the court making a decree for the payment of money which might have been recovered in an action at law. *Comm. v. Smith*, 344 Pa. 381, 25 A.2d 694 (1942).

complied with the agreed upon procedures for the operation of the landfill.

The claims of Agsco and Lombardi were denied. The case is before us on appeal from an order denying appellant's exceptions to the chancellor's adjudication and decree. We affirm.

Appellants raise several issues of a factual nature with which we will deal briefly. Additionally, appellant Lombardi contests the admissibility of evidence of his conviction of mail fraud and the award of damages against him as an individual.

Our standard of review was explained in *Frowen v. Blank*, 266 Pa.Super. 145, 403 A.2d 585 (1979) where we wrote:

> The standard of review by an appellate court in an equity case has been discussed many times. It has been held that the findings of the chancellor will not be reversed unless it appears that he has clearly abused his discretion or committed an error of law. *Yuhas v. Schmidt*, 434 Pa. 447, 258 A.2d 616 (1969). The chancellor's findings have the full force of a jury verdict, and if supported by sufficient evidence, and if affirmed by the court en banc, will not be disturbed on appeal. *Herwood v. Herwood*, 461 Pa. 322, 336 A.2d 306 (1975); *Girard Trust Bank v. Sweeney*, 426 Pa. 324, 231 A.2d 407 (1967); *Philadelphia Fresh Food v. M. Levin & Co.*, 239 Pa.Super. 287, 288, 361 A.2d 886, 889 (1976).

Id., 266 Pa.Super. at 147, 403 A.2d at 586.

Appellant contends essentially that the chancellor's findings that the written contract was not modified orally and that appellant-Lombardi was liable individually lack sufficient factual basis. We do not agree.

■ Appellants contend that the written contract was orally modified by the Borough Manager to permit a deduction from the amount due the Borough from Agsco for expenses incurred by Agsco. The lower court found Mr. Lombardi's testimony to be the only evidence of such a modification. Indeed, appellants point to no other support

in the record for their allegation. The lower court, in a better position to judge the credibility of witnesses than are we, decided that Mr. Lombardi's testimony was not credible. We find no abuse of discretion in its conclusion.[2]

■ Appellant also argues that there is not sufficient evidence to support the imposition of damages on Mr. Lombardi individually.

The lower court found Agsco and Mr. Lombardi had withheld a report of the total receipts of the landfill operation in violation of the contract. The court found this deception to constitute fraud by both the company and its president. We agree and note that,

> ... [T]he appropriate occasion for disregarding the corporate existence occurs when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.

*Zubick v. Zubick & Sons, Inc.*, 384 F.2d 267, 272 (3rd Cir. 1967), cert. denied 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968).

Mr. Lombardi was convicted of mail fraud in the U.S. District Court for the Western District of Pennsylvania. As the lower court noted, when the District Court imposed sentence upon him, it specified that he should pay restitution as provided by the Court of Common Pleas, Allegheny County. The lower court's imposition of individual liability, then, prevented Mr. Lombardi from avoiding liability for a crime.

Having concluded on the basis of the facts before it that Mr. Lombardi had individually defrauded the Borough, the lower court acted within its discretion in imposing damages upon him.

**2.** Appellants raise as a separate issue the question of whether the Borough Manager had authority to make such a modification. Because we agree with the lower court's finding that no such modification was entered into, we will not address this issue. Similarly, we will not address appellant's issue number "V" as it is also based on the assumption that an oral modification occurred.

■  Related to the previously discussed question is appellants' contention that evidence of Mr. Lombardi's conviction for mail fraud should not have been admitted as evidence of fraud.  The conviction stems from the same circumstances that gave rise to the instant civil proceeding—that is, the reporting of false information to the Borough.

In *Hurtt v. Steroni*, 416 Pa. 493, 498, 206 A.2d 624, 626 (1964), our Supreme Court wrote, "We are equally of the opinion that when one has been convicted of a felony, the result of which is of financial benefit to him, the record of his guilt should bar his avoidance of restitution therefor." The court went on to find a prior conviction of extortion to be conclusive evidence of the fact of extortion in a civil case arising from the same circumstances.  The court explained,

> The defendant was presented with more than ample opportunity to overcome the charges lodged against him while he was swathed in a cloak of presumed innocence. His case was twice presented to a federal jury which found him guilty of extortion beyond a reasonable doubt, upon the same facts which are now urged as the basis for his civil liability.  To now hold that the effect of those jury determinations is *nil* not only would be to fly in the face of reason, but also would be a general indictment of the whole American jury system.  We are not now prepared to say that the mere technical effect of the doctrines of res judicata and collateral estoppel regarding identity of parties is sufficient to overcome the policy which requires us to give conclusive effect to the prior conviction herein. The defendant should not now be heard to deny that which was established by his prior criminal conviction, without proof that his conviction was procured by fraud, perjury or some manner of error now sufficient to upset the conviction itself.  Defendant has had his day in court and has failed to instill even a reasonable doubt in the collective mind of his then jury.

The chancellor in the present case, then, properly admitted evidence of appellant Lombardi's prior conviction.

■  Finally, appellant contends that it is entitled to damages for breach of the contract by the Borough.

We conclude from our reading of appellants' brief and the lower court opinion that appellants' central claim is that the contract called for the leasing by the Borough of certain property owned by the Keystone Oaks School District, as additional landfill property. No such lease was made. The lower court made no specific finding as to this claim, but did note that it believed any such claim to have been waived by appellants' continued performance of the contract in the face of what they considered to have been a breach by the other party.

In *Gray v. Maryland Credit Finance Corporation*, 148 Pa.Super. 71, 25 A.2d 104 (1942), this court wrote,

The principle is general that whenever a contract not already fully performed on either side is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform, unless the right to retain the excuse is not only asserted, but assented to.

Id., 148 Pa.Superior Ct. at 76, 25 A.2d at 106–107.

The chancellor found the following facts. Appellants entered into the written contract and began performance in June, 1972. Shortly thereafter, appellants received a report from an engineering firm that indicated that use of the School District property was contingent upon obtaining a lease to it. In late 1972 or early 1973, Agsco began to dump on the School District land. In September, 1973, Agsco asked the Borough to obtain a lease to the property. Inspections of the property by the Environmental Health Supervisor of the Division of Water Pollutants and Solid Waste Control of Allegheny County resulted in the finding of violations and shortly thereafter, Agsco ceased the operation of the site.

If appellants are correct in their allegation that the School District property should have been available to them, (the record indicates much controversy on that question) they certainly were aware of any breach by the Borough well before they ceased operations. As early as July, 1972, when they received the engineers' report, appellants knew that

some other step had to be taken before they could commence dumping operations on their property. Instead of seeing that a lease was secured, appellants dumped fill on the property giving rise to complaints from those nearby. Almost ten months after dumping fill on the School District property, during which time operation continued pursuant to the contract, appellants asked the Borough to secure a lease. Under these circumstances, we agree that appellants waived any claim that failure to secure a lease constituted a breach by the Borough.[3]

Finding no abuse of discretion in the lower court's findings, we affirm.

**3.** In that portion of their argument in which they claim a right to damages, appellants make no statement of what breaches they allege occurred. We gather from an earlier section of their brief that in addition to the above discussed question, appellants complain that they suffered damages because of the removal of an asphalt road from the landfill site. We make no judgment as to the merits of their claim but find that the lower court was justified in not granting damages to appellants. The testimony of the President of the Borough Council was that appellants made no request that the Borough "do anything about the road." The chancellor was entitled to believe this testimony and find appellants to have waived any such claim.