MINNETONKA, INC., Plaintiff,

v.

SANI–FRESH INTERNATIONAL,
INC., Defendant.

Civ. No. 4–84–527.

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 25, 1984.

Earl D. Reiland, Merchant, Gould, Smith, Edell, Welter & Schmidt, James Loken, and Karen Loeffler, Faegre & Benson, Minneapolis, Minn., for plaintiff.

Vance K. Opperman, Linda L. Holstein, Opperman & Paquin, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION
## AND ORDER

DIANA E. MURPHY, District Judge.

## I. BACKGROUND

Plaintiff, Minnetonka, Inc. (Minnetonka), brought this action for damages, declaratory and injunctive relief, against defendant, Sani-Fresh International, Inc. (Sani-Fresh), alleging violations of the Sherman Act, the Clayton Act, and the Minnesota Antitrust Law as well as deceptive trade practices. Jurisdiction is alleged under 15 U.S.C. §§ 15 and 26, and 28 U.S.C. § 1337. This matter is now before the court upon the motion of Sani-Fresh to stay this action or to dismiss without prejudice and upon the

motion of Minnetonka for preliminary injunctive relief.

## II. FACTS

Sani-Fresh manufactures liquid hand soap dispensers for use in washrooms. It also manufactures hand soap in refill cartridges for use in its dispensers.

Minnetonka has recently begun manufacturing a refill cartridge of liquid soap for use in on-wall dispensers. Its refill cartridge can be used in Sani-Fresh's dispensers.

On May 9, 1984 Sani-Fresh filed an action against Minnetonka in the United States District Court for the Western District of Texas, Civil Action No. SA–84–ZA–973. On May 21, 1984 Sani-Fresh filed a first amended complaint in the Texas action. On June 4, 1984 Minnetonka moved the Texas court to dismiss the action for lack of subject matter jurisdiction, for failure to comply with Fed.R.Civ.P. 11, for failure to state a claim or, in the alternative, for summary judgment. Also on June 4, 1984 Minnetonka filed its complaint in the action now before this court. Sani-Fresh has since received leave from the court to file a second and third amended complaint in the Texas action.

On July 18, 1984 Minnetonka moved here for a temporary restraining order to enjoin Sani-Fresh "during the pendency of this action from suing any distributor or user of Minnetonka's refill cartridge for use in on-wall dispensers, if such suit is based upon the distributor or user selling, using or placing Minnetonka cartridges in an on-wall dispenser." In an order issued July 19, 1984 the court denied the motion, ruling that Minnetonka had not made a sufficient showing for the relief sought. The court applied the standard set in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir.1981), and noted in its discussion that this action appeared to be a compulsory counterclaim in the prior filed Texas action.

The hearing on the motions now before the court was held on August 22, 1984. On that same day the court was informed by counsel that the panel on multidistrict litigation had ruled to consolidate this case along with other related actions in the Western District of Texas. Accordingly, the court held it would be improvident for it to rule on the pending motions at that time. The court has since been informed by counsel that this action was not included in the consolidation order of the panel on multidistrict litigation. Both parties therefore have renewed their claims for relief under their respective motions.

Sani-Fresh contends that its action filed in Texas on May 9, 1984 is the first filed action and that Minnetonka's claim must therefore be brought as a counterclaim to that action. Minnetonka counters that the Minnesota action filed June 4, 1984 is the first filed action because Sani-Fresh's earlier complaints in Texas were fatally defective. In the alternative it argues that under equitable principles the first filed rule should not be applied.

Minnetonka seeks preliminary injunctive relief to enjoin Sani-Fresh from bringing suit against distributors or users of Minnetonka cartridges unless they first obtain leave of this court.

## III. DISCUSSION

■ The basis for Sani-Fresh's motion to dismiss or stay is that this action is a compulsory counterclaim to its prior filed action in Texas. The general rule is that when an action before a court "involves a claim that should be a compulsory counterclaim in another pending federal suit the court should stay its own proceedings or dismiss the claim." *Republic Precious Metals, Inc. v. Republic Precious Metals Corp.*, 575 F.Supp. 1256, 1259 (1984). There is a sound basis for this approach:

[I]t is not for this court, brought into the fray as a second arena, to determine the choice of forum. That decision should and will be left to the federal court having prior jurisdiction, where the usual form of motion to transfer pursuant to 28 U.S.C. § 1404(a) may be employed to present the problem.

*Id.* (quoting *Commerce & Indus. Ins. Co. v. Cablewave Ltd.*, 412 F.Supp. 204, 208 (S.D.N.Y.1976)).

*Republic's* first filed rule is only applicable when the claims filed in the subsequent suit are compulsory counterclaims to the prior filed action. The parties disagree as to which of their actions is "first filed." Based upon the record made here, however, it appears that the Texas action filed by Sani-Fresh on May 9, 1984, is the first filed action and that its complaint was not fatally defective. Minnetonka argued in its memorandum that it would be premature for the court to stay or dismiss this action because it was planning to file a motion to dismiss the action in Texas under the *Republic* rule. It is not clear whether such a motion has been initiated. In any event, a stay here would not be premature because it could be lifted if the Texas court were to determine that this case was the first filed action or were to conclude that judicial economy would be served by dismissal or transfer to this court. *See id.* at 1259.

Having determined the Texas action to be first filed, the question becomes whether Minnetonka's claims are compulsory counterclaims. A compulsory counterclaim is defined as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a).

■ Four tests may be considered in determining whether the claim in question arose out of the same transaction or occurrence within the meaning of Rule 13(a):

1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

4) Is there any logical relation between the claim and the counterclaim?

*Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 264 (8th Cir.), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979); 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1410 (1971). In the case of each of these tests, an affirmative answer to the question posed means that the counterclaim is compulsory. 6 Wright & Miller, *supra,* at § 1410, p. 43.

■ Application of these tests leads to the conclusion that Minnetonka's claims for antitrust injury are compulsory counterclaims to the trademark infringement action in Texas. There clearly will be common questions of fact and overlapping evidence, and it is likely that many of the same transactions or occurrences will be the subject matter of both suits. *Cf. Kentucky Fried Chicken v. Diversified Packaging,* 549 F.2d 368 (5th Cir.1977); *Super Products Corp. v. D P Way Corp.,* 75 F.R.D. 659 (E.D.Wis.1977); *see also Picante, Inc. v. Jimenez Food Products, Inc.,* 1982–2 Trade Cases ¶ 64, 977 (W.D.Tex.1982). In addition, a logical relationship exists between the actions. For example, Minnetonka's claim of antitrust violations is a direct defense to Sani-Fresh's enforcement of its trademark action. *See* 15 U.S.C. § 1115(b)(7).

Minnetonka initially conceded in its memorandum that its claim would be a compulsory counterclaim. At the hearing, however, Minnetonka took the position that its claims are not necessarily compulsory counterclaims. The authorities cited by Minnetonka do not support that position, however.

In *Toro Co. v. Alsop,* 565 F.2d 998 (8th Cir.1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1579, 55 L.Ed.2d 802 (1978), the court retained jurisdiction over several antitrust counts while severing a patent count and transferring it to a previously pending consolidated patent infringement action in Kansas. The *Toro* defendants moved only to transfer the patent count and made no attempt to transfer the antitrust counts which the plaintiff had chosen to file in Minnesota. The *Toro* court therefore had no opportunity to consider whether the antitrust claims filed two years after initiation of the patent litigation in Kansas

should be compulsory counterclaims. *Id.* at 999.

Minnetonka also argues that the first filed rule is an equitable doctrine that "should not be mechanically applied against would be antitrust plaintiffs, whom Congress intends to have a broader than usual choice of venue." *Columbia Pictures Indus. v. Schneider,* 435 F.Supp. 742, 748 (S.D.N.Y.1977), *aff'd* 537 F.2d 1288 (2d Cir.1978). Applying equitable principles to the case at hand, however, simply buttresses the conclusion that the action should be stayed and the litigation consolidated in Texas. The extenuating circumstances present in *Columbia* that led that court to make an exception to the first filed rule simply do not exist here. *See id.* at 747–78. Even more conclusive is that judicial economy and efficiency support this litigation going forward in one forum, that forum being Texas where all other pending related cases have been consolidated and are proceeding. *See id.* at 748; *Hypro, Inc. v. Seeger-Wanner Corp.,* 292 F.Supp. 342, 344–45 (D.Minn.1968).

Minnetonka has failed to make any additional showing for injunctive relief beyond that already rejected on its motion for a restraining order. It has not satisfied the *Dataphase* tests. *See Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109 (8th Cir.1981); Memorandum Opinion and Order of July 19, 1984. Furthermore, in light of the decision to stay this action it would be improvident to grant such injunctive relief at this time.

### ORDER

Accordingly, for the reasons expressed above, and based on all the files, records, and proceedings herein,

IT IS HEREBY ORDERED

1) That the motion of defendant Sani-Fresh International, Inc. for a stay is granted.

2) That the motion of plaintiff Minnetonka, Inc. for a preliminary injunction is denied.