**FULLER COMPANY, Plaintiff,**

v.

**BROWN MINNEAPOLIS TANK AND FABRICATING COMPANY, Defendant.**

**Civ. A. No. 86–6676.**

United States District Court,
E.D. Pennsylvania.

Sept. 30, 1987.

Mark F. Brancato, Bethlehem, Pa., Malcolm J. Gross, Allentown, Pa., for plaintiff.

Lawrence R. Waldoch, Jonathan M. Bye, Minneapolis, Minn., Daniel Q. Harrington, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

This action and a related action pending in the United States District Court for the District of Minnesota arise out of alleged mutual breaches of a contract executed by and between Fuller Company ("Fuller") and Brown Minneapolis Tank and Fabricating Company ("BMT").

Fuller, on or about March 19, 1985, entered into a contract with Northern States Power Company ("NSP"), the Project Manager and owner of a major generating power station now being constructed in Minnesota. Pursuant to the NSP–Fuller contract, Fuller was required to design, manufacture and supply certain equipment for an "air quality control system" and a "solids handling system" to be erected and installed at the power station.

Fuller and BMT, on or about May 16, 1985, executed a "purchase order contract", (Plaintiff's Complaint, Doc. # 1, Ex. "A"), under which BMT was required to manufacture and supply certain portions of the air quality control and solids handling systems Fuller had agreed to supply under the NSP–Fuller contract.[1] Three (3) supplements to the original purchase order contract were executed by Fuller and BMT. Each supplement was executed on the same form as the original purchase order contract. (See affidavit of Joseph L. Cairo, Doc. # 6, Ex. "D".)

On October 29, 1986, BMT instituted suit against Fuller in the District Court for the Tenth Judicial District of Sherburne County, Minnesota. BMT in its Complaint seeks $193,730.00 in damages allegedly suffered by it as a result of: (1) increased manufacturing costs resulting from delays caused by Fuller in meeting its obligations under the agreement and (2) alterations by Fuller in the design and specifications of the equipment BMT had contracted to supply. (See Fuller's Motion For Summary Judgment, affidavit of Mark F. Brancato, Esq., Doc. # 5, Ex. "A".) On November 5, 1986, BMT filed a mechanic's lien against the power station owned by NSP in the amount of the damages it sought in the Minnesota action, i.e., $193,730.00. (See Plaintiff's Complaint, Doc. # 1, Ex. "B".) On November 13, 1986, Fuller removed BMT's Minnesota state court action to the United States District Court for the District of Minnesota.

On November 14, 1986, Fuller filed this action against BMT alleging that BMT had breached its contract by: (1) instituting the Minnesota action in violation of the forum selection clause contained in the Fuller–BMT contract and (2) filing the aforementioned mechanic's lien when it had waived its right of lien to secure payment for the work it performed. Fuller requests relief in the form of, inter alia: (1) a declaration pursuant to 28 U.S.C.A. § 2201 (West 1982) that BMT breached the forum selection clause and an order directing that the "mini-trial" which the parties have agreed upon be held within the confines of the Eastern District of Pennsylvania and (2) a declaration that BMT breached the contract by filing the mechanic's lien and an order directing BMT to remove the lien and forebear from filing any future liens against the power station in connection with the work performed pursuant to the Fuller–BMT contract.

On November 18, 1986, BMT moved the District Court of Minnesota for a preliminary injunction restraining Fuller from proceeding with this action. The District Court, per the Hon. Diana E. Murphy, denied BMT's motion.

Upon this tortured procedural history, both parties have now moved this Court for summary judgment.

Originally, BMT requested that we stay this action or simply dismiss it on the ground that, because the claims asserted

---

1. BMT also entered into a contract with Fuel Economy Contracting Company which required BMT to erect the equipment it supplied pursuant to the Fuller–BMT contract.

by Fuller in this action constitute "compulsory counterclaims" to BMT's Minnesota action, we should defer to the District Court of Minnesota in order to avoid multiplicious litigation since it first obtained jurisdiction over the issues raised by both actions.[2] *See, e.g., Pumpelly v. Cook,* 106 F.R.D. 238 (D.D.C.1985); *Minnetonka v. Sani–Fresh International, Inc.,* 103 F.R.D. 377 (D.Minn.1984) (Murphy, J.); and *Berkshire International Corp. v. Marquez,* 69 F.R.D. 583 (E.D.Pa.1976). BMT has abandoned this contention and expressed its willingness to have this Court resolve the issues regarding the forum selection clause and the waiver of lien clause. Likewise, Judge Murphy has also conveyed to us her willingness to defer to this Court as to these issues. Thus, we see no impediment to our disposing of the parties' cross-motions for summary judgment.

A. Challenges Common to Both the Lien Clause and the Forum Selection Clause.

■ BMT initially argues that, since Fuller fraudulently induced it into entering into the contract, it is entitled to rescission of the agreement, and thus, the Lien clause and the forum selection clause contained in the Fuller–BMT contract are inapplicable to its dispute with Fuller. BMT ignores the fact that when presented with the design changes made by Fuller, it did not cease performance and sue for damages, but rather, it continued to perform, and has, in fact, completed all work requested by Fuller. By electing to proceed with its performance, BMT waived whatever right it may have had to rescind the contract on the grounds that Fuller had fraudulently induced it into entering into the agreement. *See, e.g.,* Restatement (Second) of Contracts § 85 comment b, illustration 2 (1981); *see also, A.L. Williams Corp. v. Faircloth,* 652 F.Supp. 51, 53 (N.D.Ga.1986) ("claim for rescission requires that a party act promptly upon discovery of the fraud"); *Rouse Woodstock v. Surety Federal Savings & Loan Association,* 630 F.Supp.

1004, 1009 (N.D.Ill.1986) ("movant must not merely allege a fraudulent transaction but fraud which goes to the selection of venue"); *Daniel Hamm Drayage Co. v. Waldinger Corp.,* 508 F.Supp. 390, 395 (E.D.Mo.1981) ("where fraud in the inducement is established, the defrauded party may avoid the contract by timely election made promptly upon discovery of facts from which the right to avoid the contract arises"); and *Westinghouse Electric Corp. v. Garrett Corp.,* 437 F.Supp. 1301, 1331 (D.Md.1977) ("defendant['s] challenge to the existence of a contract ... comes too far down the road of performance ... (the) proper action would have been to bring an action for rescission ... By act of performance (defendant) lost its right to deny the existence of the contract.")

■ In a similar vein, BMT argues that the design changes made by Fuller were so "radical" as to be beyond the scope of the parties' agreement, and therefore, the additional work performed by BMT is not governed by the terms of the contract. It is indeed true under the contract doctrine of "cardinal" changes that where a party to a contract alters the terms of the other party's performance to such an extent that the alterations could not have been within the realm of the parties contemplation as evidenced by the parties' written agreement, the other party may elect not to perform and hold the other party liable for breach of contract. *See, e.g., Westinghouse Electric Corp. v. Garrett Corp., supra.* However, as with a party's failure to seek rescission of a contract upon discovery of fraud in its inducement, a party cannot continue to perform under the contract and later be heard to say that the other party breached the agreement prior to the continued performance, and therefore, no contract existed. By electing to continue its performance, BMT remains bound by the terms of the contract. Its only remedy for Fuller's alleged breaches of the contract is a claim

**2.** A third alternative would have been for this Court to transfer this action to the District Court of Minnesota so that it might be consolidated with the Minnesota action.

for monetary damages.[3] *See, e.g., S. Leo Harmonay, Inc. v. Binks Manufacturing Company,* 597 F.Supp. 1014 (S.D.N.Y. 1984); *McAlpine v. AAMCO Automatic Transmissions, Inc.,* 461 F.Supp. 1232 (E.D.Mich.1978) (applying Pennsylvania law); and *Cities Service Helex, Inc. v. United States,* 543 F.2d 1306, 211 Ct.Cl. 222 (1976).[4]

BMT next challenges the efficacy of the forum selection and Lien clauses contained the Fuller–BMT contract with the argument that those provisions of the agreement were superseded by contradictory provisions contained in the NSP–Fuller contract.

**B. The Forum Selection Clause.**

Paragraph GC.19 of the General Conditions of the NSP–Fuller contract, regarding choice of forum and law, provides as follows:

> ... Since the domiciles, residences and principal places of business of the large number of persons and entities engaged on the Project are expected to be in several differing jurisdictions, the Project site is recognized as the only common forum or jurisdiction with which all such parties are expected to have contacts ... Accordingly, NSP and (Fuller) agree that the following procedures will govern disputes.

> 1. The rights and obligations of the parties shall be determined in accordance with the laws of (Minnesota).
> 2. * * *
> 3. All disputes which arise in connection with, or are related to the Project ... shall be resolved ... by litigation only in the court having general jurisdiction for the county of the Project site, [or the United States District Court for the District of Minnesota] and not elsewhere ... To this end, (Fuller) waives any rights (it) may have to insist that litigation to which (Fuller) is a party be had in any venue other than the site of the Project ...

(Affidavit of William Jennrich, Doc. # 12, Ex. "D".)[5]

The Fuller–BMT contract, to the contrary, provides that, "This Contract shall be governed by the law of and enforced in the courts of the Commonwealth of Pennsylvania which courts shall have exclusive jurisdiction". (Plaintiff's Complaint, Doc. # 1, Ex. "A".)

BMT's argument as to the exact method of "incorporation" of ¶ GC.19 of the NSP–Fuller contract into the Fuller–BMT agreement is somewhat convoluted. BMT does not argue that ¶ GC.19 was made a part of the Fuller–BMT contract as a result of some provision of their agreement. Suprisingly, the Fuller–BMT contract does not contain, as is apparently common in the construction trade, an "incorporation"

---

**3.** The question of whether BMT's action against Fuller for the "extra" work it allegedly performed as a result of Fuller's "modifications" in the equipment specifications is best described as an action for "breach" of contract or an action "under" the contract is purely semantical. The Fuller–BMT contract, as is common in the trade, contains a "Changes" clause, which provides as follows:

> Purchaser [*i.e.,* Fuller] may at any time by written notice ... *make changes to this pur*chase order, including but not limited to changes in quantity size or capacity in drawings and specifications ... Should any change increase or decrease the cost of or the time required for performance of this purchase order, an equitable adjustment shall be made to price or delivery schedule or both as the case may be ... Nothing contained in this clause shall relieve Seller [*i.e.,* BMT] from proceeding without delay in performance of this purchase order as directed without regard

to whether a proper adjustment has yet been made.

(Plaintiff's Complaint, Doc. # 1, Ex. "A".) Thus, BMT's action is perhaps best described as an action for breach of the "Changes" clause based on Fuller's alleged failure to make a proper "equitable adjustment" to the contract price.

**4.** We assume in this context that Fuller's design changes constituted alterations beyond the "scope" of the "Changes" clause of the Fuller–BMT contract, *i.e.,* cardinal changes, and therefore, represented a material breach of the contract.

**5.** Paragraph GC.6 of the NSP–Fuller contract also provides that "... Each subcontract shall specifically require each Subcontractor to abide by the requirements of these General Conditions ..." (Affidavit of William Jennrich, Doc. # 12, Ex. "E".)

clause subsuming the terms of the "master" contract, *i.e.,* the NSP–Fuller contract, into the terms of the Fuller–BMT contract. *See, e.g., John F. Harkins Company, Inc. v. The Waldinger Corporation,* 796 F.2d 657 (3d Cir.1986) and *S. Leo Harmonay, Inc. v. Binks Manufacturing Co., supra.* BMT, rather, seeks to reach the same result such an incorporation clause might lead to through two other circuitous routes.

■ First, BMT argues that it was told by Fuller that it would be required to abide by the General and Special Conditions of the NSP–Fuller contract, and to this end, Fuller provided BMT with a copy of same on April 11, 1985. (*See* affidavits of William Jennrich, Doc. # 12, ¶ 8, and Arnold C. Stenseth, Doc. # 12, ¶¶ 3–6.) In response, BMT's employees reviewed the General and Special Conditions, inclusive of ¶ GC.19, and by letter dated April 17, 1985, informed Fuller that it had no objections to abiding by same. (*See* affidavit of Arnold C. Stenseth, Doc. # 12, ¶ 5 and Ex. "A" attached thereto.) BMT readily admits, however, that these events occurred *prior to* its execution of the contract. As further support for its position, BMT also relies upon a May 16, 1985, letter from Arnold C. Stenseth of BMT to Fuller. BMT contends that this letter "evidences BMT's intention in executing the purchase order that any terms contained on the reverse side of the purchase order were superseded by any conflicting terms and conditions contained in the Special Conditions or General Conditions previously provided by Fuller to BMT". (*Id.* at ¶ 6 and Ex. "C" attached thereto.) We find BMT's arguments in this regard to be without merit.

As to the communications between Fuller and BMT prior to May 16, 1985, they are irrelevant. The contract executed by BMT specifically provided on its face that, "... this purchase order, including all terms and conditions on the face and reverse side hereof, shall constitute the *entire* agreement unless you shall expressly notify Full-

er to the contrary within ten (10) days after the date of this order". (Plaintiff's Complaint, Doc. # 1, Ex. "A".) (Emphasis added.) The reverse side of the purchase order similarly provided that, "Upon acceptance by (BMT) as defined on the face hereof or when confirming a previous oral agreement, this purchase order shall supersede all other written or oral agreements, and shall constitute a valid and binding contract". (*Id.*) Based on these provisions, there can be no doubt that the purchase order constituted a complete and exclusive statement of the terms of the parties' agreement. Thus, the terms of the contract may not be contradicted by evidence of any prior negotiations or agreements. *See* 13 Pa.C.S.A. § 2202 (Purdon's 1984).

■ As to the letter of May 16, 1985, from Arnold Stenseth to Fuller, the only inference which may be drawn from this document is that BMT was excepting to but a single provision of the purchase order, *viz.,* the warranty provision. Further, BMT did not condition its acceptance of the terms of the contract upon Fuller's assent to the terms set forth in Stenseth's letter. Therefore, with the possible exception of the warranty provision of the purchase order, BMT became bound according to the terms and conditions of the order when it executed the contract and returned it to Fuller. *See* Pa.C.S.A. § 2207 (Purdon's 1984).[6] BMT's reliance upon *Vespe Contracting Co. v. Anvan Corporation,* 399 F.Supp. 516 (E.D.Pa.1975) is misplaced. In *Vespe,* the subcontract contained specific language upon which the court concluded that the arbitration provisions of the "master" contract had been "incorporated" into the subcontract. As stated earlier, no such language, *i.e.,* an incorporation clause, can be found in the Fuller–BMT contract. Thus, *Vespe* is not applicable to this action.

■ BMT argues secondly that, as a "third party beneficiary" of the NSP–Full-

6. We note Fuller's purported rejection pursuant to 13 Pa.C.S.A. § 2207(b)(3) (Purdon's 1984) of the "modification" made by BMT in Stenseth's letter of May 16. (*See* affidavit of Joseph L. Cairo, Doc. # 5, Ex. "C".) Based on our conclu-

sion that BMT's letter of May 16 can only be construed at the most as stating an alteration to the warranty provisions of the purchase order, we need not even consider the effect of Fuller's letter of May 20.

er contract, specifically ¶ GC.19, it is entitled to assert Fuller's purported waiver of its right to litigate actions regarding the power plant in a venue other than Minnesota and require that Fuller litigate its dispute with BMT in that State. BMT's argument is, to say the least, novel. Even assuming that BMT possessed third party beneficiary status under the NSP–Fuller contract, it lost that status in the instant that it acquired it, *i.e.*, when it executed the purchase order and attained subcontractor status. As admitted by BMT, it was aware of ¶ GC.19 prior to executing the Fuller–BMT contract. Thus, at the time it signed the agreement, it was cognizant of the fact that Fuller was possibly in breach of ¶¶ GC.6 and GC.19 by assenting to the terms of the purchase order. BMT, however, raised no objection to the forum selection clause contained in the Fuller–BMT contract. We, therefore, do not believe that BMT can now be heard to say that Fuller must comply with the provisions of ¶ GC.19 with regard to it. By accepting the terms of the purchase order contract, BMT waived whatever rights it may have had as a third party beneficiary of the NSP–Fuller contract.[7] In sum, we find that BMT breached its contract with Fuller by instituting suit against Fuller in the courts of Minnesota. We also find that the proper venue in which to conduct the "mini-trial" the parties have agreed upon is the Eastern District of Pennsylvania.

## C. The Lien Clause.

■ As to the purported waiver of BMT's right to assert a mechanic's lien based on the work it performed pursuant to its contract with Fuller, BMT raises the same challenges to the efficacy of the Lien clause contained in the purchase order as it did with the forum selection clause, *viz.*, that the terms of the NSP–Fuller contract, specifically ¶ GC.23 [8], supersede the contradictory terms of the Fuller–BMT subcontract, and that under the terms of the NSP–Fuller contract, BMT was allowed to file a mechanic's lien to secure payment for the work it performed. We reject these arguments for the same reasons that we concluded that ¶ GC.19 of the NSP–Fuller contract did not supersede the forum selection and choice of law clause of the Fuller–BMT contract.[9]

■ BMT next challenges the validity of the Lien clause on the ground that it violates Minnesota public policy. This argument is clearly without merit. Applying either the law of Pennsylvania or Minnesota, there is no public policy which would have prevented BMT from waiving its right to assert a mechanic's lien as to the work it performed.

---

7. For the same reasons that we find that Pennsylvania is the proper venue for the adjudication of the Fuller–BMT dispute, we conclude that we must apply the laws of Pennsylvania, as specified by the Fuller–BMT contract, to this action.

8. Paragraph GC.23 of the NSP–Fuller contract provides:

The Supplier, if requested, shall deliver to NSP prior to final payment a complete waiver or release of all claims or liens arising out of the work. At NSP's sole option, receipts in full from all Subcontractors or materialmen may be accepted in lieu thereof. If NSP requests, Supplier shall also furnish an acceptable affidavit stating that so far as he has knowledge or information, the releases and receipts include all the labor and material for which a lien could be filed. The Supplier may, if any Subcontractor, laborer, or materialman refuses to furnish a release or receipt in full, furnish a bond satisfactory to NSP, to indemnify NSP against any lien. If any lien remains unsatisfied after all payments are made, the Supplier shall immediately take all steps necessary to obtain the release of such liens. If NSP is compelled to pay or defend a lien claim arising out of the Work, Supplier shall reimburse NSP for all costs and expenses associated therewith, including reasonable attorney's fees.

(Affidavit of William Jennrich, Doc. # 12, Ex. "G".)

9. Even if ¶ GC.23 were incorporated into the terms and conditions of the Fuller–BMT contract, we do not believe that BMT could rely upon the clause as authority for its filing of a lien. ¶ GC.23, unlike ¶ GC.19, clearly applies only to the parties to the contract, *i.e.*, NSP and Fuller, and by no stretch of the imagination confers any rights upon any third parties. Thus, even if ¶ GC.23 were incorporated into the Fuller–BMT agreement, it would not be contradictory to the Lien clause of the subcontract. We also need not examine whether ¶ GC.23 would, in fact, authorize BMT to file such lien.

■ BMT also challenges the jurisdiction of this Court to require BMT to remove the lien, since to do so would require us to act *in rem* because we would in essence be removing a cloud upon the title of the power plant. Because we do not have jurisdiction over the *res* involved, *i.e.,* the power plant in Minnesota, BMT contends that we should not grant the relief sought by Fuller insofar as the lien is concerned.

The soundness of BMT's argument depends upon the nature of the action asserted against it by Fuller, *viz.,* is Fuller's action regarding the lien "local" or "transitory" in nature. If this aspect of the action is "local" in nature, the proper venue for resolution of the dispute would be Minnesota. If it is "transitory", we need only possess *in personam* jurisdiction over the defendant to adjudicate the dispute. The proper characterization of the action as either "local" or "transitory" depends upon the relief sought by Fuller. If Fuller seeks *in rem* relief, we must have jurisdiction over the property at issue as opposed to jurisdiction over the defendant. Clearly, we do not possess *in rem* jurisdiction over the power plant. If, however, Fuller seeks only *in personam* relief, we need only possess jurisdiction over BMT.

Here, Fuller does not seek an order cancelling the lien or directing some agency of the State of Minnesota to discharge BMT's lien. Rather, Fuller seeks a declaration that BMT breached the agreement by filing the lien and an order directing BMT to take whatever action is necessary to have the lien removed. We do not believe that this type of relief may be described as *in rem,* and therefore, we do not believe that Fuller's action regarding the lien may be characterized as "local" in nature. To the contrary, we believe that the relief sought by Fuller is *in personam* in nature, and thus, we need only possess personal jurisdiction

over BMT, which we do. As indicated, Fuller does not request that this Court of its own authority cancel BMT's lien. Assuming we find BMT in breach of the contract because it filed the lien and direct it to remove the lien, BMT may, if it so chooses, ignore our order. Fuller's only alternative, in such a case, would be to seek to hold BMT in contempt of our order and have us impose coercive sanctions upon BMT. Even in the face of coercive sanctions, however, BMT could continue to refuse to discharge the lien. For these reasons, we believe that Fuller seeks only *in personam* relief, and thus, the fact that the property upon which the lien exists is located in Minnesota presents no bar to our resolving this dispute. *See, e.g., Raphael J. Musicus, Inc. v. Safeway Stores, Inc.,* 743 F.2d 503 (7th Cir.1984) (action seeking personal judgment, so long as it is based on fraud, trust or contract, is not local in nature simply because it will ultimately have an effect on real property) and *French v. Clinchfield Coal Co.,* 407 F.Supp. 13 (D.Del.1976); *but see, Rogers v. Clipper Cruise Lines, Inc.,* 650 F.Supp. 143 (D.Col.1986) and *Minichiello Realty Associates, Inc. v. Britt,* 460 F.Supp. 896 (D.N.J.1978), *aff'd. mem.,* 605 F.2d 1196 (3d Cir.1979).[10]

■ BMT's final challenge to the Lien clause is that the provision is not, in fact, a waiver of BMT's right to file a mechanic's lien at all. The Lien clause of the Fuller–BMT contract provides as follows:

> (BMT) shall discharge at once or shall furnish to (Fuller) a bond satisfactory to (Fuller) against any mechanic's lien ... which may be filed in connection with the work performed under this purchase order. (BMT) hereby expressly waives and releases any and all right of lien in connection with such work and agrees to furnish, or cause to be furnished, to

---

**10.** The local-transitory dichotomy has been described both as an issue of subject matter jurisdiction and as a question of venue. *Compare Minichiello Realty Associates, Inc. v. Britt, supra,* and *Rogers v. Clipper Cruise Lines, Inc., supra,* with *Raphael J. Musicus, Inc. v. Safeway Stores, Inc., supra,* and *French v. Clinchfield Coal Co., supra.* Based on our conclusion that Fuller's action is transitory in nature and that we, therefore, need only possess *in personam* jurisdiction over BMT, we need not address the question of venue versus subject matter jurisdiction. We also need not examine the efficacy of a forum selection clause in a "local" action which specifies a jurisdiction other than the one in which the *res* is located.

(Fuller), such waiver of lien as may be requested by (Fuller) as a condition precedent to any payment hereunder or otherwise. If at any time, there should be evidence of any lien or claim for which (Fuller) might become liable, (Fuller) shall have the right to retain out of any payment then due or thereafter to become due to (BMT) an amount sufficient to completely indemnify (Fuller) against any such lien or claim. If any lien or claim should remain unsatisfied after all payments are made to (BMT), (BMT) will refund to (Fuller) all monies that (Fuller) may be compelled to pay in discharge of such lien or claim together with all costs and reasonable attorney's fees.

(Plaintiff's Complaint, Doc. #1, Ex. "A".)

BMT argues that the Lien clause is ambiguous and that material issues of fact as to the meaning of the clause precludes a summary judgment in Fuller's favor on this issue. As support for its argument that the clause is ambiguous, BMT points to the fact that on at least two occasions, Fuller requested that BMT execute partial lien waivers as a condition precedent to receiving monies due BMT from Fuller. (*See* affidavit of William Jennrich, Doc. #12, ¶12.) BMT argues that if the Lien clause constituted a waiver of its right to assert a mechanic's lien, why did Fuller request the execution of such partial lien waivers?

While we cannot dispute that Fuller's drafting of the Lien clause is somewhat tortured, the mere fact that Fuller could have drafted the provision in a "better" way does not render the clause unclear and ambiguous. More importantly, even if we agree that it is unclear as to whether BMT completely and fully waived its right to assert a mechanic's lien from the inception of its contractual relationship with Fuller, it is perfectly clear that BMT covenanted that if and when it did file such a lien, Fuller could require one of two things from BMT: (1) the immediate removal of the lien or (2) the furnishing of a bond against the lien satisfactory to Fuller. Fuller has, in fact, in at least one instance requested such alternative relief. (*See* Fuller's Motion For Summary Judgment, Doc. #5, p.

4, ¶1.) Further, Fuller's conduct in the form of requiring BMT to furnish partial lien waivers is completely consistent with this interpretation of the contract.

For the reasons stated above, we find that the Lien clause of the Fuller–BMT contract to be clear and unambiguous to the extent that it required BMT to discharge any lien that it did file or to furnish Fuller with a bond against any such mechanic's lien. We will, therefore, direct BMT to either discharge the lien in question or furnish a bond satisfactory to Fuller against said lien.

▪ Finally, we deny Fuller's request that we order BMT to forebear from filing any similar liens in the future. We cannot, based on the record before us, say that there would be no situation in which BMT could file such a lien. This may, in fact, be very well true. However, we decline to engage in such an analysis based on a situation which has not even as yet arisen and may very well never arise. If Fuller believes that BMT at some future time has again breached the contract, Fuller may against seek redress for such a breach in the appropriate court.

D. Conclusion.

In sum, we find that the Fuller–BMT contract required that any litigation arising out of Fuller's and BMT's contractual relationship be conducted in the courts of the Commonwealth of Pennsylvania or the Federal district courts within the Commonwealth and that BMT breached its agreement with Fuller by instituting the Minnesota action. The "mini-trial" which the parties have agreed upon shall, therefore, be conducted within the confines of the Eastern District of Pennsylvania. We also find that BMT breached the Fuller–BMT contract by filing a mechanic's lien against the power plant to secure payment for the work it performed pursuant to said agreement and refusing to either remove the lien or furnish to Fuller a satisfactory bond against the lien.

## ORDER

AND NOW, this 30th day of September, 1987, upon consideration of the parties' cross-motions for summary judgment and the memoranda submitted in support of their respective positions, we declare pursuant to 28 U.S.C.A. § 2201 (West 1982) that:

(1) the defendant breached the forum selection clause contained in the contract executed by and between it and the plaintiff as more fully described in the attached memorandum by instituting suit against the plaintiff in the courts of Minnesota;

(2) the "mini-trial" which the parties have agreed upon should be conducted within the confines of the United States District Court for the Eastern District of Pennsylvania pursuant to said forum selection clause; and

(3) the defendant breached the Lien clause contained in the contract executed by and between it and the plaintiff as more fully described in the attached memorandum by filing a mechanic's lien against the "Minnesota power plant" in order to secure payment for work it performed pursuant to said agreement and refusing to either remove the lien pursuant to the plaintiff's request or furnish a satisfactory bond to the plaintiff against said lien.

Based on the above declarations, IT IS ORDERED that the defendant within ten (10) days of the filing of this Order with the Clerk of this Court either take the steps necessary to remove its lien against the Minnesota power plant or furnish to the plaintiff a satisfactory bond against said lien.

IT IS FURTHER ORDERED that the plaintiff's Motion For Summary Judgment is GRANTED and the defendant's Motion For Summary Judgment is DENIED in accordance with the attached memorandum.