NORTH WALES ASSOCIATES, INC.,

v.

INTOWN PROPERTIES, INC.

No. CIV.A. 99–5042.

United States District Court,
E.D. Pennsylvania.

March 27, 2001.

Kevin W. Walsh, Philadelphia, PA, Matthew J. Swett, Pepper Hamilton LLP, Philadelphia, PA, William R. Hinchman, Adelman, Lavine, Gold & Levin, Philadelphia, PA, for plaintiff.

Jeffrey L. Abrams, Abrams And Associates, Philadelphia, PA, Kimberly A. Schonauer, Philadelphia, PA, for defendant.

### MEMORANDUM

WALDMAN, District Judge.

Plaintiff asserts a breach of contract claim arising from defendant's alleged default under a lease for commercial space.

Plaintiff seeks accelerated rent payments of $1,515,406.20. Presently before the court is plaintiff's motion for summary judgment.

When considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 568 (3d Cir.1986). Only facts that may affect the outcome of a case are "material." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. All reasonable inferences from the record are drawn in favor of the non-movant. *Id.* at 256, 106 S.Ct. 2505.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which he bears the burden of proof. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party may not rest on his pleadings but must come forward with competent evidence from which a reasonable factfinder could render a verdict in his favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989); *Woods v. Bentsen*, 889 F.Supp. 179, 184 (E.D.Pa.1995).

From the competent evidence presented, as uncontroverted or otherwise viewed most favorably to defendant, the pertinent facts are as follow.

In February 1999, Intown Management Group ("ITMG") was awarded three contracts to manage Philadelphia-area properties administered by the United States Department of Housing and Urban Development ("HUD"). ITMG was obligated to begin servicing the contracts in April 1999. To do so, ITMG required appropriate office space with many phone lines.

On March 12, 1999, ITMG entered into a lease agreement with plaintiff pursuant to which ITMG agreed to lease approximately 17,075 square feet on the first floor of plaintiff's office building. The term of the lease was five years at a graduated rent which ranged from $23,478.13 per month during the first six months to $27,035.42 per month for the final six months. The lease provided that ITMG would move into the building's first floor on April 1, 1999 after certain agreed-upon improvements were made to the space. The lease agreement did not state that time was of the essence. To the contrary, it provided that plaintiff would not be subject to liability for failure to deliver possession by the target date and that ITMG's obligations under the lease would not be affected by such a failure.

The lease agreement provided that ITMG would be in default if it were to file for bankruptcy. The section of the lease listing remedies in the event of a default included repossession of the premises and an acceleration of all rental payments. The lease agreement also contains a provision that "notwithstanding anything to the contrary stated herein, Landlord shall undertake commercially reasonable efforts to mitigate its damages in the event of a Tenant default."

Defendant executed a lease guaranty on March 12, 1999 by which defendant guaranteed lease payments to plaintiff "subject to any rights or defenses applicable to the obligations of [ITMG]."

After plaintiff represented to ITMG that it would be unable to complete the agreed-upon improvements to the first floor space by April 1, 1999, the parties agreed that ITMG would use second floor space in the building until the improvements were completed. The second floor space was dirty, and initially had no air conditioning system or ventilation and had inadequate phone lines for ITMG's business needs. Plaintiff later installed an air conditioning system at ITMG's request, but the system "did not work." ITMG then installed fans, but did not use them because the air circulation disturbed papers in the office.

ITMG could not meet the processing deadlines imposed by HUD because the temporary nature of the space made installation of appropriate work stations economically unfeasible and because of the lack of adequate telephone lines.[1]

The first floor space was not ready until the middle of June 1999, at which point ITMG was preparing to sign an amendment to the lease for an additional 10,000 square feet in the building. This amendment also provided that ITMG could occupy the second floor of the building until December 1999 when improvements to the additional space would be completed. The amendment was executed on September 10, 1999.

ITMG moved most of its personnel into the first floor space in June 1999, although some overflow personnel continued to occupy the second floor pursuant to the amendment. The heating and air conditioning systems in the first floor space would run simultaneously. Several employees became ill from a black film emitted by the air conditioning system when it was first turned on.

On September 22, 1999, ITMG filed for bankruptcy. ITMG received notice of termination due to its default on the same day. Later that day, plaintiff's property manager informed ITMG that it was in default under the lease and that all ITMG employees must vacate the premises. Also on September 22, 1999, HUD representatives informed ITMG that the HUD contracts would be terminated due to ITMG's failure to perform. Plaintiff then changed the locks on the building and dismantled the passcard system.

ITMG made no rental payment after September 1999. Plaintiff demanded that defendant, as guarantor, pay the accelerated rent. Defendant has made no payment to plaintiff. Plaintiff did receive one payment of $25,000 from the trustee in bankruptcy for ITMG. Plaintiff obtained a new tenant, effective August 1, 2000.

It is undisputed that ITMG filed for bankruptcy on September 22, 1999 and that this action constituted a default under the lease agreement. Defendant argues, however, that plaintiff breached the lease agreement first by impairing ITMG's right to quiet enjoyment because the condition of the leased space was so substandard that plaintiff had "substantially interfered with the intended use of the property," and by failing to deliver possession at the agreed-upon time.[2]

 A tenant's right to quiet enjoyment is impaired when the landlord blocks the tenant's access to the premises or changes some essential aspect of the premises so substantially as to render the property unsuitable for the purposes for which

---

**1.** ITMG needed 100 telephone lines, but had only 40.

**2.** There is no competent evidence that plaintiff had agreed to provide space which could

accommodate 100 telephone lines and defendant does not predicate its argument on any failure of plaintiff to do so.

it is leased. *See 2401 Pennsylvania Avenue Corp. v. Federation of Jewish Agencies of Greater Philadelphia,* 507 Pa. 166, 489 A.2d 733, 738 (1985); *Pollock v. Morelli,* 245 Pa.Super. 388, 369 A.2d 458, 460 (1976). Defendant, however, has not shown that the simultaneous operation of the heat and air conditioning systems rendered the premises unsuitable for the purpose for which it was leased.[3] The single discharge of dirt at the very beginning of ITMG's occupancy of the first floor clearly was not a permanent or substantial change in the condition of the space.[4] One cannot reasonably find from the competent evidence of record that these conditions breached the right to quiet enjoyment.

A lack of air conditioning could breach the covenant of quiet enjoyment.[5] It is uncontroverted, however, that plaintiff installed an air conditioning system in the second floor space upon ITMG's request. Defendant does not state and produces no competent evidence that plaintiff was aware the system was not operating properly and thus had reasonable cause to rectify the situation.

As for plaintiff's delay in delivering the first floor space, the lease agreement expressly provided that plaintiff would not be subject to any liability for failure to deliver possession by the target date and that ITMG's obligations under the lease would not be affected by such a failure. Thus, ITMG contractually waived any defense based on a failure to deliver the leased premises by April 1, 1999.[6]

Plaintiff is thus entitled to summary judgment on liability. The issue of damages, however, is another matter.

A landlord whose tenant has abandoned the premises in violation of the lease is not required to mitigate damages. *See Stonehedge Square v. Movie Merchants,* 552 Pa. 412, 715 A.2d 1082, 1084 (1998). Here, however, there is an express lease provision imposing on plaintiff a duty to

---

3. Defendant has presented no competent evidence that the functioning or malfunctioning of the HVAC system resulted in temperature so extreme as to render the premises unsuitable to conduct business.

4. *See Chi–Mil Corp. v. W.T. Grant Co.,* 70 F.R.D. 352, 360 (E.D.Wi.1976) (holding under common law principles lessor's conduct must be grave and permanent to breach lessee's quiet enjoyment); *Goldman v. Alkek,* 850 S.W.2d 568, 571 (Tex.App.1993) (holding under common law principles breach of quiet enjoyment established by showing permanent deprivation of use and enjoyment of premises).

5. Plaintiff also was obligated under the lease to "furnish the premises with electricity, heating and air conditioning."

6. Even apart from the express waiver, ITMG's conduct would constitute a modification or waiver of the delivery provision. ITMG agreed to take possession of the second floor until the first floor improvements were completed, and paid rent for the two months that it occupied the second floor. It then moved into the first floor space and continued to pay rent through September 1999, *See Muchow v. Schaffner,* 180 Pa.Super. 413, 119 A.2d 568, 570 (1956) (agreement to modify may be inferred from actions of parties to the contract); *Pennsylvania Turnpike Comm'n v. Litton RCS, Inc.,* 20 Pa.Cmwlth. 577, 342 A.2d 108, 113–14 (1975) (non-breaching party's actions may establish waiver of contractual right). *See also Fuller Co. v. Brown Minneapolis Tank and Fabricating Co.,* 678 F.Supp. 506, 509–10 (E.D.Pa.1987) ("a party cannot continue to perform under a contract and later be heard to say the other party breached the agreement prior to the continued performance"); *Dravo Contracting Co. v. James Rees & Sons Co.,* 291 Pa. 387, 140 A. 148, 150 (1927) (defendant waived compliance with delivery date when it allowed plaintiff to continue construction after contractual delivery date); *Agsco Equip. Corp. v. Borough of Green Tree,* 297 Pa.Super. 33, 443 A.2d 284, 287 (1981) (a party that chooses to accept performance and continue to perform despite known excuse remains liable under contract).

mitigate. Moreover, "even upon breach of a material condition in a commercial lease a landlord must elect *between* repossession and actual damages or acceleration of the balance due." *Finkle v. Gulf & Western Mfg. Co.*, 744 F.2d 1015, 1020 (3d Cir.1984) (emphasis in original). *See also Homart Development Co. v. Sgrenci*, 443 Pa.Super. 538, 662 A.2d 1092, 1100–01 (1995) (holding landlord may not recover both possession and rent for balance of term upon default by tenant despite provision for both remedies in lease); 8 Summ. Pa. Jur. 2D Property § 26:144 (1993). Having repossessed the leased premises when ITMG filed for bankruptcy, plaintiff cannot recover accelerated rent.

There is no evidence of record of plaintiff's actual damages. There is no evidence of the amount plaintiff has realized from the new tenant. There is no evidence regarding whether plaintiff undertook "commercially reasonable efforts to mitigate its damages" as required by the lease agreement. The Court thus cannot enter judgment on the issue of damages.

It would appear to be practical and economical under the circumstances for the parties to endeavor in good faith to achieve agreement as to the amount of actual damages. The court encourages such an effort. Should this prove unachievable, the case will proceed to trial on damages.

### ORDER

**AND NOW,** this day of March, 2001, upon consideration of plaintiff's Motion for Summary Judgment (Doc. # 7) and defendant's response thereto, consistent with the accompanying memorandum, **IT IS HEREBY ORDERED** that said Motion is **GRANTED** on the issue of liability and **DENIED** on the issue of damages.