## Friedland, Appellant, v. Weinstein.

348

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

Argued January 11, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

▮▮▮▮▮  ▮▮▮▮▮▮▮  reargument refused May 14, 1968.

▮▮▮▮▮▮▮▮▮▮▮▮

*Harold E. Kohn,* with him *Harry Shapiro, David N. Bressler,* and *Dilworth, Paxson, Kalish, Kohn & Levy,* for appellant.

*David F. Maxwell,* with him *Obermayer, Rebmann, Maxwell & Hippel,* for appellees.

OPINION PER CURIAM, March 15, 1968:

This is an action in equity instituted by George Friedland against Matthew B. Weinstein and Rosalie Weinstein, individually and trading as St. Davids Company and Rosemont Construction Company. In the interests of brevity and clarity, the defendants will be referred to as "Weinstein," it being admitted that Matthew B. Weinstein is the principal defendant. Fried-

land claims that he was entitled to a share of profits made by Weinstein on the sale of certain property because, according to Friedland, Weinstein acquired those profits in breach of a fiduciary obligation owing Friedland as a co-joint venturer.

The chancellor entered a decree nisi dismissing the complaint. After exceptions filed by Friedland, the court en banc affirmed the dismissal and the decree was made final. Friedland appealed.

The facts follow. The Weinsteins owned a 56-acre tract in Radnor Township, Delaware County along the Lancaster Pike and Radnor-Chester Road, on which they built a motor inn and two office buildings, one being occupied by the General Electric Company and the other by the Burroughs Corporation. They had developed 21 of the 56 acres by January 27, 1960, when they sold to Friedland an undivided one-half interest in the remaining undeveloped 35.559 acre tract, at $26,-000 per acre, the parties agreeing that Weinstein would assume responsibility for the management and maintenance of the 35-acre tract, each paying one-half of the carrying charges.

In 1963, Sears-Roebuck & Company offered to buy this 35 acre tract, and Friedland and Weinstein asked $35,000 per acre. Sears refused to pay more than $34,-000 and Friedland and Weinstein agreed to sell on that basis. Sears now decided that it also wanted to purchase a one-acre tract owned by the Weinsteins which was located between the building leased to General Electric and the Motor Inn. It therefore conditioned its offer to purchase the 35-acre tract upon acquiring the additional one-acre tract owned by the Weinsteins. Since this one-acre piece of land provided the means of ingress and egress to the other buildings already developed by the Weinsteins on the 21 acres, and as Sears' use of that one-acre tract would adversely af-

fect, in Weinstein's opinion, the already developed properties, Weinstein rejected Sears' proposal. Friedland was advised of this impasse.

Because Friedland was leaving on an extended European trip, Weinstein met with Friedland's attorney and the agreement with respect to the sale to Sears of the 35-acre tract at $34,000 per acre was executed by Friedland on May 20, 1963, the agreement however, expressly providing: "15. Anything herein to the contrary notwithstanding Buyer shall have the option to rescind this agreement and to receive back the deposit paid hereunder if by June 13, 1963, Buyer so elects because of the following: (a) The failure by Buyer to obtain satisfactory ingress to and egress from Lancaster Pike and/or Radnor Chester Road . . ." Thus, the agreement clearly left open further negotiations with respect to the one-acre tract owned by Weinstein, since that tract as Friedland knew, was important to Sears obtaining "satisfactory ingress to and egress from Lancaster Pike and/or Radnor Chester Road . . ." Weinstein continued negotiations with respect to the one-acre tract, and on May 23, Weinstein entered into an agreement for the sale of that acre for $34,000, coupled with Sears' lease of the General Electric Building for ten years. This agreement, as was the agreement with respect to the purchase of the 35-acre tract, was made subject to Sears procuring satisfactory ingress and egress to the Pike and Road above mentioned by June 3, 1963. On June 3, 1963, Sears availed itself of its option to rescind and cancelled both the agreement for the purchase of the 35-acre tract and the purchase of Weinsteins' one-acre tract. The cancellation being for the sake of record as the time limit was expiring, negotiations nevertheless continued with respect to the right of ingress and egress which involved only the one-acre tract. Finally, on June 14, 1963, an

agreement was reached whereby Weinstein would sell the one-acre tract without Sears being subject to any lease of the General Electric Building but in lieu thereof Sears would pay Weinstein in addition to the $34,000 per acre, $170,000 to indemnify him for losses of rent from the General Electric Building, plus carrying charges on that building, during the period of a year and one-half that Sears' use of the one acre would interfere with activities within the buildings, resulting in loss to the Weinsteins. On July 3, 1963, sale of the one-acre tract and the 35-acre tract, the latter being at the originally agreed-upon price at $34,000 per acre, was consummated, Friedland being present at the closing and offering no objections.

Later, however, he charged Weinstein with breach of fiduciary obligation, claiming he had not been advised that Weinstein had renegotiated a total selling price of $204,000 on his one-acre tract and that he acted secretly and contrary to the duty of loyalty he owed the plaintiff. He maintained that he should have been advised that both agreements had been cancelled and subject to renegotiation; and that Weinstein breached a duty to him in renegotiating solely with respect to the one-acre tract. But, it must be clear that there was nothing to renegotiate with respect to the 35-acre tract: Sears had emphasized it would pay no more than $34,000 per acre for the 35-acre tract and Friedland was agreeable to that price. Thus there was nothing to renegotiate with respect to the 35-acre tract price. The cancellation of the 35-acre agreement was obviously only for the purpose of permitting Sears to continue its negotiations regarding the one-acre tract which was crucial to Sears' rights of ingress and egress to the Lancaster Pike and Radnor-Chester Road upon which rights Sears' option of cancellation depended. The losses to be sustained by Weinstein particularly in the use of

the General Electric Building as a result of Sears use of the one-acre tract were indemnified in the final agreement by a lump sum payment of $170,000.00 instead of a ten-year lease of the General Electric Building. Weinstein's decision to sell the one-acre tract even though that tract was important to the use of his buildings made it possible for the sale of the 35-acre tract. If Weinstein had refused to sell the one-acre tract, thus permitting the sale of the 35-acre tract to be rescinded by Sears, Friedland would undoubtedly have complained that as a result of his actions he had lost the profit of approximately $140,000. Weinstein did not breach any trust when he chose to sell his individually owned one acre on terms which indemnified him for the loss resulting to him from Sears' use of that one-acre tract. This is not a case where Weinstein was placing the jointly owned property at a disadvantage to obtain a profit on his individually owned property. The purchase price of the jointly owned property had been agreed to and approved by all the parties, including Friedland, even before Sears made any suggestion of its need of the use of the one-acre tract. Weinstein was not guilty of any breach of trust in selling his one-acre tract which was valuable to him for anything less than indemnified him for all the losses resulting to him from Sears purchase and use of this very important one-acre. The fact that the agreement does not set forth the division between the land price and the indemnification figure is not controlling. The agreement for the sale of the one acre expressly states that "The purchase price herein represents the total consideration and has been arrived at by including a factor designed to indemnify such beneficial owners of the capital stock of Rosemont Construction Company who also have an interest in St. Davids Company from any capital loss in value of this stock which

they may suffer as a result of the construction of the through roadway for vehicular traffic over the premises sold thereunder." Parol evidence was thus admissible to show that the indemnification figure was $170,000, and that that figure in effect represented a year and a half net income on the General Electric Building. Nor is the fact that the real estate agent's commission was based on the total $204,000 consideration controlling. That Weinstein chose to pay the agent a commission on the $170,000 he was receiving as indemnification for the loss occasioned by the taking and use of the one-acre tract by Sears cannot change the fact that the consideration paid was for indemnity as well as for the land itself. The first agreement for the sale of the one-acre tract showed that the land was being sold at the same price as the 35 acres and that Sears was assuming a ten-year lease of the General Electric Building. In the renegotiated agreement, the ten-year lease was omitted and an indemnity to Weinstein substituted therefor. Thus, it is clear that the only change in the subsequent agreement was the form the indemnification was to take: in the original one, Sears was to lease the General Electric Building for ten years; in the renegotiated one, Sears was to pay a lump sum free of any ten-year lease of the building.

The fact that Weinstein held the original agreement respecting the 35-acre tract in escrow pending the negotiations did not constitute any breach of trust, as that agreement by its very terms was subject to cancellation if Sears did not obtain satisfactory means of ingress and egress to the aforesaid Pike and Road.

A reading of the record reveals that Friedland, and during his absence, Friedland's attorney, were sufficiently apprized of Weinstein's continuing negotiations with Sears with respect to the one-acre tract,

which negotiations Friedland knew were crucial to a consummation of the sale of the 35-acre tract in which Friedland held a joint interest. Those negotiations reveal no breach of trust by Weinstein.

Decree affirmed: costs on the appellant.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

I can reach no other conclusion than one which would impose the highest fiduciary obligation upon appellees. The purchaser (Sears) of the two tracts undoubtedly looks upon the transaction as a single acquisition with a single cost. The allocation of the gross cost between the owners of tract A and tract B requires delicate decision making, and demands that full disclosure be made to all interested parties. Here, this disclosure was not made. On the contrary, the only information or advice that appellees gave to appellant was that the sale price would be based on a per acre price of $34,000, when in reality the appellees subsequently received $204,000 for their acre.

Where a buyer refuses to purchase joint venture property unless one of the parties to the joint venture will also agree to the sale of his individually owned real estate, which real estate is adjacent to the jointly held land and essential to the buyer's use of the jointly held land, then a sale may be consummated by the owner of the individually owned real estate only by making full disclosure to his partner of the entire transaction. Here full disclosure was not made and some remedy is demanded.

Mr. Justice EAGEN joins in this dissenting opinion.