462 A.2d 713

**Donald SNELLBAKER, Appellant,**

**v.**

**Hans HERRMANN and Euresco, Inc.**

**Donald SNELLBAKER**

**v.**

**Hans HERRMANN and Euresco, Inc.**

**Appeal of Hans HERRMANN.**

Superior Court of Pennsylvania.

Argued March 23, 1981.

Filed June 17, 1983.

Petition for Allowance of Appeal Denied Nov. 1, 1983.

522

G. Thomas Miller, Harrisburg, for Snellbaker, appellant (at No. 183) and appellee (at No. 7).

Harold N. Fitzkee, Jr., York, for Hans Herrmann, appellant (at No. 7) and appellee (at No. 183).

Before PRICE,* WIEAND and LIPEZ, JJ.

* PRICE, J., did not participate in the consideration or decision of this case.

WIEAND, Judge: **

In these cross appeals from a judgment entered following nonjury trial of an assumpsit action, the parties contend that the findings of the trial judge are not supported by the evidence. We disagree and, therefore, affirm.

If the issue is simple, the facts are not. On the contrary, they are extremely complicated. Donald Snellbaker, the plaintiff, and Hans Herrmann, the defendant,[1] entered a joint venture to import and sell German automobiles. Snellbaker was to provide the money to obtain the vehicles, and Herrmann was to service and sell them upon arrival in the United States. From the proceeds, plaintiff was to be reimbursed for the moneys advanced, expenses were to be paid, and the balance was to be divided equally between the parties.

Defendant introduced plaintiff to Gary Munz, a German automobile dealer, to whom plaintiff paid a total of $56,112 in exchange for Munz's promise to obtain and ship to the United States six vehicles as follows:

1   300 D Mercedes Benz
    (This vehicle had been sold to and was being ordered for Dr. Max Stoner.)
1   300 D Mercedes Benz
2   280 SE Mercedes Benz
1   300 SL Silver
1   Unimog

Munz failed to deliver these vehicles. Nevertheless, he continued to enjoy the confidence of Snellbaker and Herrmann. Subsequently, they changed their arrangement, and $20,000 was earmarked for eleven Unimogs.[2] This altered

---

** The preparation of this opinion was reassigned to the writer on February 11, 1983.

**1.** Also named as a defendant was Euresco, Inc., a corporation owned and controlled by Hans Herrmann.

**2.** A Unimog is an all terrain vehicle frequently used by the military. It may also be used in farming and for recreational purposes. The trial court's recitation of the facts states that only 10 Unimogs were to

arrangement called for delivery, in addition to the Unimogs, of the vehicle for Dr. Stoner and a green Mercedes Benz coupe which the parties had examined in Germany. Munz also failed to deliver these vehicles.

On December 3, 1977, plaintiff and defendant, together with their attorneys, met to discuss Munz's failure to deliver the vehicles. Their prior joint venture was confirmed, except that the proceeds were thereafter to be held in escrow by their attorneys. Herrmann was to receive and sell the Unimogs and the green Mercedes, plaintiff was to be repaid the moneys which he had advanced, the parties were to be reimbursed for their expenses, and the profits were to be divided equally. Herrmann represented that he had a potential purchaser who was interested in buying the Unimogs for $12,500 each. At that time the parties agreed also to subject to the terms of their agreement a silver 300 Mercedes SL, which Munz had shipped to Herrmann and which was then in the port at Baltimore. This car had been among the six vehicles originally to be sold to Snellbaker by Munz but removed by the amended order.

The silver Mercedes, together with two other Mercedes vehicles, had been purchased by Herrmann from Munz with moneys advanced by Messrs. Herr and Nett, with whom Herrmann had entered a separate joint venture for the importation of automobiles and prefabricated homes from Germany. Subsequently, Herrmann refused to abide by his agreement with Snellbaker that the 300 Mercedes SL at the port of Baltimore be subjected to the terms of their joint venture.

The trial court concluded that Herrmann had no liability to Snellbaker for the $56,112 which Snellbaker had advanced to Munz.[3] The court concluded, however, that Herrmann had subjected the Mercedes 300 SL to the joint

be purchased. However, the parties were in agreement that those ten were to be in addition to the Unimog included in the original transaction.

**3.** Snellbaker testified that he was also making efforts by a separate action to recover this amount from Munz.

venture as a part of the "escrow agreement," that Herrmann had breached this agreement and that Snellbaker was entitled to recover the value thereof. The court also found that the remaining two vehicles were not a part of Herrmann's business venture with Snellbaker and concluded that Snellbaker had no rights therein or to the proceeds to be derived from their sale.

It is well established that the findings of the trial judge, sustained by a court en banc, have the force and effect of a jury's verdict. If they are based on sufficient evidence, they will not be disturbed on appeal. *Idell v. Falcone*, 427 Pa. 472, 474, 235 A.2d 394, 395 (1967); *Girard Trust Bank v. Sweeney*, 426 Pa. 324, 330, 231 A.2d 407, 411 (1967); *Metz Contracting, Inc. v. Boxer Heights, Inc.*, 261 Pa.Super. 177, 180, 395 A.2d 1373, 1374 (1978). See: *Agsco Equipment Corp. v. Borough of Green Tree*, 297 Pa.Super. 33, 36, 443 A.2d 284, 286 (1981). "Appellate review, therefore, is limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error of law." (Citations omitted.) *Metz Contracting, Inc. v. Boxer Heights, Inc.*, *supra* 261 Pa.Super. at 180, 395 A.2d at 1375.

A joint venture is not a status created or imposed by law; it is a relationship voluntarily assumed and arising wholly from contract. 2 Williston on Contracts 557, § 318A (3rd ed. 1959). Whether persons have engaged in it must depend primarily upon their intention as expressed in their agreement and the construction they have placed upon it. "To constitute a joint venture certain factors are essential: (1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) there must be a 'joint proprietary interest and right of mutual control over the subject matter' of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction." *McRoberts v. Phelps*, 391 Pa. 591, 599, 138 A.2d 439, 443–444 (1958). A joint venture partakes in many ways of a

partnership, the principal difference being that it usually, though not necessarily, applies to a single transaction instead of being formed for the conduct of a continuing business. *West v. Peoples First National Bank & Trust Co.*, 378 Pa. 275, 281–282, 106 A.2d 427, 431 (1954).

The rights, duties, and obligations of joint venturers, as between themselves, depend primarily upon the terms of the contract by which they assume that relationship. 46 Am.Jur.2d, Joint Ventures § 36. The obligations of the parties need not be equal; they may differ in character and/or amount. The liability of a joint venturer for a proportionate part of the losses or expenditures of the enterprise may be fixed by the terms of the agreement. Absent a limitation in the agreement, a joint venturer will be held responsible with his or her associates for the losses sustained by the enterprise. See: *Handley v. Ching*, 2 Hawaii App. 166, 627 P.2d 1132, 1136 (Hawaii App.1981); *Kahle v. Turner*, 66 Ohio App.2d 49, 52, 420 N.E.2d 127, 130 (Ohio App.1979); *Laird v. Johns*, 276 Or. 1095, 1097, 557 P.2d 670, 671 (1976); *Rice v. Lambert*, 408 S.W.2d 287, 291–292 (Tex.Civ.App.1966); 2 Williston on Contracts, 574–575, § 318A (3rd ed. 1959); 48A C.J.S. § 39; 46 Am.Jur.2d, Joint Ventures § 47. However, where one of the co-venturers is responsible to provide funds only and the other agrees to supply knowledge, experience or services, the one who provides the capital cannot, if it is lost, obtain contribution from his associate. See: *Kovacik v. Reed*, 49 Cal.2d 166, 315 P.2d 314 (1957); *Bowling, et al. v. Duvall, et al.*, 270 Ky. 494, 109 S.W.2d 1200 (1937), reiterating principles announced in *Heran v. Hall*, 40 Ky. (1 B. Mon.) 159 (1840); *Boxwell v. Champagne*, 229 Miss. 355, 91 So.2d 256 (1956); *Allison v. Dilsaver*, 387 S.W.2d 206 (Mo.App.1965). See also: *Newton v. Sackett*, 10 D. & C.2d 507 (Phila.1957).[4] In

---

**4.** Our research has uncovered only one jurisdiction that would allow recovery of a proportionate share of losses in this situation. The Florida courts have concluded that it is more equitable to permit one who has advanced money to a venture and lost it to seek recompense from the other, non-funding venturer. See: *Florida Tomato Packers, Inc. v. Wilson*, 296 So.2d 536 (Fla.Dist.App.1974).

the instant case, the agreement was that Snellbaker would provide and necessarily risk the capital for the venture; whereas Herrmann was to service and sell the imported cars. Under this agreement, Snellbaker was not entitled to contribution for the loss of the risk capital, if ultimately there is a loss of the capital which he invested in this joint enterprise.

Snellbaker argues, however, that by the terms of the informal agreement of December 3, 1977, Herrmann assumed an obligation to repay Snellbaker for his capital outlay. The trial court found no such intent, and the evidence supports this finding. The agreement, noted in longhand and signed by the parties and their attorneys, was as follows:

1. Larkin & Griest [attorneys for both parties] Escrow Agent for all funds.
2. Herrmann will secure delivery of vehicles & deposit proceeds of sale with Larkin & Griest.
3. Snellbaker to be reimbursed for $56,112 advanced plus expenses from sale proceeds.
4. Herrmann to be reimbursed for expenses.
5. Remainder (Profit) to be equally divided.

This agreement, it must be observed, was entered after the original order from Munz had been altered. No longer was Munz expected to ship six Mercedes-Benz vehicles. Rather, he was to obtain and ship eleven Unimogs, a green Mercedes, and the Mercedes 300 D for Dr. Stoner. The arrangement between Snellbaker and Herrmann with respect to these vehicles remained the same as the original agreement, except that the proceeds from sales of vehicles were to be held in escrow by the attorneys. With this exception, the obligations of the joint adventurers were not altered. Herrmann did not assume an obligation to reimburse Snellbaker for his initial investment, and he did not guarantee shipment of the vehicles by Munz.

On this occasion the parties also agreed, albeit verbally, to go to Baltimore, take delivery of a silver 300 SL

Mercedes which had arrived, sell it and apply the proceeds in accordance with their agreement. This vehicle, being one that had been part of the original order to Munz and later removed therefrom by the parties' amendment, was titled in Herrmann's name but had been purchased, as were two additional vehicles, with moneys provided by Messrs. Herr and Nett. Herrmann subsequently defaulted on his agreement with Snellbaker. He took possession of the vehicle and refused to sell it or pay to Snellbaker the value thereof. The trial court found that Herrmann had agreed to make this a part of the Snellbaker joint venture and had breached the verbal agreement by refusing to subject the vehicle thereto. The court enforced the escrow agreement with respect to this vehicle and permitted Snellbaker to receive the value thereof and apply the same on account of his capital outlay.

Snellbaker contends that he is also entitled to a lien upon the two additional vehicles, a 300 SEL 6.3 and a 280 SL Coupe, which were also titled in Herrmann's name. The court found that Snellbaker had no lien upon these vehicles and no claim for the value thereof. This is clearly supported by the evidence.

It is correct, of course, that a joint venturer owes a fiduciary duty of the utmost good faith and must act toward his associate with scrupulous honesty. 2 Williston on Contracts 622, § 318C (3rd ed. 1959). See: *Friedland v. Weinstein,* 429 Pa. 347, 242 A.2d 797 (1968); *Universal Builders Supply, Inc. v. Shaler Highlands Corp.,* 409 Pa. 334, 186 A.2d 30 (1962); *William Goldstein Co. v. Joseph J. & Reynold H. Greenberg, Inc.,* 352 Pa. 259, 42 A.2d 551 (1945). In the instant case, however, the court found that Snellbaker's evidence failed to demonstrate bad faith on the part of Herrmann. After Herrmann had made the initial introduction of Snellbaker to Munz, Herrmann returned to the United States, and negotiations were conducted by and money exchanged between Snellbaker and Munz without Herrmann's intervention or participation. Thus, it was Snellbaker who paid money to Munz without obtaining in

exchange any documents of ownership for the vehicles he intended to purchase. Herrmann has not benefitted in any way from Munz's failure to obtain and deliver the Mercedes vehicles.

A more difficult issue, but one which was neither presented to the trial court nor argued on appeal, is whether Herrmann could, in view of his fiduciary position, engage simultaneously in a similar and, perhaps, competing joint venture with persons other than Snellbaker. Because the issue has not been argued, we express no opinion. Suffice it to say that the evidence supports the trial court's findings that the two remaining vehicles were not subjected by agreement, express or implied, to the Snellbaker-Herrmann joint venture.

Herrmann has argued that the trial court erred in subjecting the silver 300 SL to the joint venture. He contends that irrespective of his subsequent agreement to sell it and apply the proceeds to the joint venture, he should not have been bound thereby because it was not his vehicle. There is no merit in this contention. In the first place, all the relevant documentation for the vehicle was in his name alone; and, therefore, he had apparent, if not actual, authority to deal with it as his own. See: 2 Williston on Contracts 247–251, § 277C (3rd ed. 1959); 3 Am.Jur.2d, Agency § 100. Moreover and in any event, having agreed with Snellbaker that the vehicle was to be sold and the proceeds applied to the joint venture, it became Herrmann's duty to obtain a title which enabled him to perform his agreement. See generally: *Daniel B. Van Campen Corp. v. Building and Construction Trades Council of Philadelphia and Vicinity*, 202 Pa.Super. 118, 122, 195 A.2d 134, 136–137 (1963); 3 Corbin on Contracts, § 562 (rev. ed. 1960); 11 Williston on Contracts, § 1295 (3rd ed. 1959). His relationship with Herr and Nett did not preclude his contractual liability for failing to act with respect to this vehicle as he had agreed with Snellbaker.

Affirmed.