**Thompson v. Monetary Management Corporation**

C.P. of Delaware County, no. 94-8987.

*James G. Wiles,* for plaintiffs.

*Matthew A. White,* for defendants.

BURR II, *J.,* March 15, 2000—The plaintiffs, Thomas C. Thompson Jr., John Petillo, William Thompson, RMH Enterprises Inc. and Quik-Tax Dollars Inc., as well as the defendants, Monetary Management Corp. and QTV Holdings Inc., have appealed from this court's order of September 30, 1999 denying the plaintiffs' post-trial motions, denying the defendants' post-trial motions, denying plaintiffs' motion to mold the verdict, and plaintiffs' supplemental motion to mold the verdict.[1]

A verdict in the above-captioned matter was returned by a jury May 14, 1999, after four days of trial, finding that the defendants breached a fiduciary duty to plaintiffs, causing them harm, and the jury awarded plaintiffs $410,363. The jury also found that defendants breached a provision of a joint venture agreement entered into between the defendants and plaintiff corporations (exhibit MMC-41), but that such was not a legal cause of any harm to plaintiffs' corporations. The jury found that defendants were not grossly negligent.

A joint venture agreement was entered into by defendant, QTV Holdings Inc., and plaintiffs, Quik-Tax Dollars Inc. and RMH Enterprises Inc., on January 13, 1993. Defendants were engaged in the business of preparing and electronically filing income tax returns and granting refund anticipation loans. The joint venture was entered into for the purpose of marketing, expanding and operating the plaintiff's, Quik-Tax Dollars Inc., business. The parties agreed that the individual plaintiffs, Thomas C.

---

1. The Honorable Clement J. McGovern Jr. was formerly the judge to whom the above-captioned matter was assigned. The retired Judge McGovern decided the motions upon which this appeal is based and contributed to the drafting of this opinion which has been filed by the undersigned judge.

Thompson Jr., John Petillo and William Thompson, had no direct claim against defendants. When the joint venture agreement was entered into, Richard M. Hersch, president of RMH Enterprises Inc., became the president of Quik-Tax Dollars Inc. He began committing fraud in the processing of tax returns, generating false checks and cashing them. Mr. Hersch was indicted and pled guilty in the United States District Court of Massachusetts to various crimes arising from his fraudulent activities. The misconduct of Mr. Hersch ultimately led to investigation by the Internal Revenue Service and the issuance of a search warrant for execution upon the premises of Quik-Tax Dollars Inc. The parties to the joint venture agreement then entered into a termination agreement on or about March 13, 1993. (Exhibit MMC-49.)

Plaintiffs contend that defendant, Monetary Management Corp., was aware of Mr. Hersch's fraudulent activities and breached their fiduciary duty to disclose that to plaintiffs before entering into the termination agreement. The latter termination agreement contained a release by plaintiffs of all claims arising from the operation of the joint venture as they might exist against Monetary Management Corp. It was agreed by all counsel that QTV Holdings Inc. and Monetary Management Corp. were the same for purposes of this trial.

Following trial, the jury entered the verdict hereinabove set forth and the parties filed post-trial motions, which were ruled upon as indicated at the outset of this opinion.

MONETARY MANAGEMENT CORP.'S APPEAL

Defendants, Monetary Management Corp. and QTV Holdings Inc., have raised but one issue on appeal, contending that this court, as a matter of law, should have

found that Monetary breached no fiduciary duty to plaintiffs. Defendants' argument suggests that there is no legal authority to support this court's submission to the jury of the issue of determining whether or not the said defendant owed any fiduciary duty to plaintiffs. Plaintiffs contend that defendant breached that fiduciary duty when it failed to communicate to plaintiffs its knowledge of the criminal conduct of Richard M. Hersch, which occurred during the joint venture.

Monetary contends that there is no legally cognizable fiduciary duty and that Richard M. Hersch's knowledge of his own fraudulent and criminal conduct should be imputed to RMH Enterprises Inc., plaintiff. Plaintiffs contend that they are entitled to the full benefit of the jury's verdict, that Mr. Hersch's misconduct cannot be imputed under Pennsylvania law to RMH Enterprises Inc., and that the evidence established that defendants in fact benefited from the nondisclosure of Mr. Hersch's criminal and fraudulent conduct.

The record clearly establishes, especially in light of this jury's verdict, that Mr. Hersch was acting by and for himself and his own benefit and was not acting for the good of any of the corporations, plaintiffs or defendants. Indeed, his conduct ultimately caused serious damage to the plaintiff corporations. Normally, knowledge of fraud by a corporate officer is imputed to the corporation when the officer's conduct was committed in the course of his employment and where the officer was acting for the benefit of that corporation. *In re Phar-Mor, etc.,* 900 F. Supp. 784 (W.D. Pa. 1995); *Rochez Bros. Inc. v. Rhoades,* 527 F.2d 880 (3d Cir. 1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976). The corporation "is of course a creature of legal fiction." *Lokay v. Lehigh Valley Cooperative Farmers Inc.,* 342 Pa. Super. 89, 492

A.2d 405 (1985). It is, therefore, obvious and logical that the knowledge of a corporate officer, when acting within the officer's scope of employment and for the benefit of the corporation, is and should be imputed to the corporation. However, there is a well-established exception providing that "knowledge of an agent in a transaction in which the agent secretly is acting adversely to the [corporation] and entirely for his own or another's purposes" is not imputed to the corporation. *F.D.I.C. v. Shrader & York,* 777 F. Supp. 533; 991 F.2d 216 (1993), *reh. denied,* 999 F.2d 1581 (5th Cir. 1993), *cert. denied,* 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); Restatement (Second) of Agency §282(1). Where the misdeeds of the corporate officer worked to the benefit of one or a group, other than the corporation, then obviously the foregoing presumption loses its logic and validity.[2] A principal is not presumed to have had knowledge or information of an agent's fraudulent conduct. *Todd v. Skelly,* 384 Pa. 423, 120 A.2d 906 (1956); *Littler v. Dunbar,* 365 Pa. 277, 74 A.2d 650 (1950); *Thees v. Prudential Insurance Co. of North America,* 325 Pa. 465, 190 A. 895 (1937); *First National Bank of Bangor v. Bangor Trust Co.,* 297 Pa. 115, 146 A. 595 (1929).

It is clear from this jury's verdict and from the lack of any dispute that Mr. Hersch acted entirely in his own interests and not for the benefit of any party to this litigation. Further, Mr. Hersch was not in the course of his employment since there is no suggestion that he was retained to submit fraudulent income tax returns. The evidence was clear in the case at bar that plaintiffs, RMH Enterprises Inc. and Quik-Tax Dollars Inc., were adversely impacted by Mr. Hersch's fraudulent conduct.

---

2. See, for discussion of these principles, the opinion of Justice Kephart for the Pennsylvania Supreme Court in *National Bank of Shamokin v. Waynesboro Knitting Co.,* 314 Pa. 365, 172 A. 131 (1934).

Therefore, the knowledge of Mr. Hersch, even though an officer of the plaintiff corporations, cannot be imputed to plaintiff corporations. Indeed, the evidence in this trial confirmed that plaintiffs did not have knowledge of Mr. Hersch's conduct until after executing the termination agreement. The circumstances of the case at bar, considering the evidence and all reasonable inferences arising therefrom in favor of the verdict winner as to this issue, indicate that to impute the knowledge of a corporate officer who for his own benefit was fraudulently conducting corporate business (filing fraudulent income tax returns) and profiting greatly therefrom, would be incongruous, repugnant to logic and justice and it is somewhat ludicrous to suggest that such knowledge should be imputed to the very corporation which the officer's conduct is destroying.

## BREACH OF FIDUCIARY DUTY

Defendants contend that the defendant corporations have no duty, when entering into a partnership with the plaintiff corporations, to disclose the misconduct of a corporate officer, criminal or otherwise, to the companies with whom they are in partnership. Further, the defendants contend that it is fatal to plaintiffs' case that there is no evidence indicating that defendant Monetary benefited from its nondisclosure.

Plaintiffs' contention is that defendants benefited from their nondisclosure concerning Mr. Hersch's criminal conduct and fraudulent background by being able to obtain plaintiffs' execution of the termination agreement which purportedly released defendants from all claims by plaintiffs. A fair review of the record in this matter evinces a sufficient quantum of evidence upon which the jury could have concluded that the defendants did so benefit. Further, defendants by way of the executed termi-

nation agreement severed their relationship with plaintiffs in time to avoid the government's execution of a search warrant and the difficulties that ensued thereafter.

The Pennsylvania Supreme Court in the matter of *McRoberts v. Phelps,* 391 Pa. 591, 138 A.2d 439 (1958), has held:

"The relationship between those in a joint venture is fiduciary in nature; upon each co-adventurer are imposed obligations of loyalty, fairness, good faith and full disclosure toward his fellow co-adventurers. Particularly is this true in the case of that co-adventurer to whom is [e]ntrusted the conduct of the enterprise, toward his associates he occupies the position of a trustee." 391 Pa. at 603, 138 A.2d at 445. (citations omitted)

Thus, this jury could well have found that defendants failed in their duty of loyalty, of fairness, of good faith, or of full disclosure. There was ample evidence presented at trial upon which the jury could have found that the defendants knew of Mr. Hersch's background and criminal activity and took no steps to advise any member of plaintiff corporations or, in fact, to do anything. Rather, defendants obtained plaintiffs' execution of the termination agreement which contained a release protecting the defendants. Whether the breach of that fiduciary duty caused damage and if so, how much, was another question which was left to the jury. The cases do not appear to hold that there must be a particular kind or amount of damage before a plaintiff can recover, but simply that there must be some harm caused to the plaintiff by a defendant's breach of its fiduciary duty to be loyal, fair, acting in good faith, and giving full disclosure towards one's co-venturers.

Defendants' post-trial motion appears to be requesting judgment n.o.v. Such will be entered only in a clear

case where the facts are such that no two reasonable minds could fail to agree that a verdict or finding was improper. *Pirozzi v. Penske Olds-Cadillac-GMC,* 413 Pa. Super. 308, 605 A.2d 373 (1992). The court must determine whether there was sufficient competent evidence to sustain the finding, granting the winner of the finding the benefit of every inference that can be reasonably drawn from the evidence and rejecting all unfavorable testimony and inferences to be drawn therefrom. *Wenrick v. Schloemann-Siemag Aktiengesellschaft,* 523 Pa. 1, 564 A.2d 1244 (1989). An appellate court will reverse a trial court's ruling only if it finds an abuse of discretion or an error of law that controlled the outcome of the case. *Timbrook v. Foremost Insurance Co.,* 324 Pa. Super. 384, 471 A.2d 891 (1984). Considering the evidence which supports the finding, the court must give the winner the benefit of the doubt and of every fact and inference deducible from the evidence. *Robertson v. Atlantic Richfield Petroleum Company,* 371 Pa. Super. 49, 537 A.2d 814 (1987), *alloc. denied,* 520 Pa. 590, 551 A.2d 216 (1988). Accepting as true all facts and proper inferences which tend to support the contention of the party against whom the motion has been made, and rejecting all testimony and inferences to the contrary, the trial judge must grant said motion when no two reasonable minds could differ that, as a matter of law, the party with the burden to do so has failed to make out its case. *Thomas v. Allegheny & Eastern Coal Co.,* 309 Pa. Super. 333, 455 A.2d 637 (1982).

All unfavorable testimony and inferences from the verdict winner's point of view must be rejected. *Mike v. Borough of Aliquippa,* 279 Pa. Super. 382, 421 A.2d 251 (1980); *Karam v. Pennsylvania Power & Light Co.,* 205 Pa. Super. 318, 208 A.2d 876 (1965); *Wilkerson v. Phila-*

*delphia Transportation Co.,* 167 Pa. Super. 616, 76 A.2d 430 (1950); *Pinto v. Bell Fruit Co.,* 148 Pa. Super. 132, 24 A.2d 768 (1942). Judgment n.o.v. may not be employed to invade the province of the jury which must be allowed to resolve all issues of fact. *Trawick v. Nationwide Mutual Insurance Co.,* 242 Pa. Super. 271, 363 A.2d 1265 (1976).[3]

It is respectfully suggested that this court's denial of a judgment n.o.v. was appropriate according to the evidence presented, the law, and justice.

Further, should the defendants be seeking a new trial as concerns these issues, then all competent evidence must be considered to determine whether or not the verdict was against the clear weight of the evidence or whether there was a clear error of law or palpable abuse of discretion on the part of this court. *Klyman v. SEPTA,* 331 Pa. Super. 172, 480 A.2d 299 (1984); *Tyus v. Resta,* 328 Pa. Super. 11, 476 A.2d 427 (1984). Any finding of abuse of discretion must be founded upon clear and convincing evidence. The trial court will be upheld on any valid ground. *Dalton v. Dalton,* 409 Pa. Super. 258, 597 A.2d 1192 (1991). The standard of review is to determine whether this court clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Stevenson v. General Motors Corporation,* 513 Pa. 411, 521 A.2d 413 (1987); *Solomon v. Baum,* 126 Pa. Commw. 646, 560 A.2d 878 (1989). An abuse of discretion is more than simply an error of judgment, but rather it is a demonstration that in reaching the conclusion, the trial court has overridden or misapplied the law, or the trial court has exercised judgment in a manifestly unreasonable manner, or allowed that judgment to be exercised as a result of partiality, preju-

---

3. See also, 20 P.L.E. judgment 124 and 125.

dice, bias, or ill will. *Spitzer v. Tucker,* 404 Pa. Super. 539, 591 A.2d 723 (1991). A new trial will be awarded only where the verdict is so contrary to the evidence as to shock one's sense of justice. *Palange v. City of Philadelphia, Law Department,* 433 Pa. Super. 373, 640 A.2d 1305 (1994); *Giovanetti v. Johns-Manville Corp.,* 372 Pa. Super. 431, 539 A.2d 871 (1988); *Ludmer v. Nernberg,* 433 Pa. Super. 316, 640 A.2d 939 (1994). There is nothing about this judgment that shocks the conscience of this court since, considering this record in a light most favorable to the plaintiff verdict winners as concerns the issue of breach of fiduciary duty, the defendants knew of the plaintiff's corporate officer's fraudulent and criminal conduct both before and during the joint venture in question, but did not disclose that information to anyone representing the plaintiffs. The knowledge of fraud and criminal activity had by this corporate officer, as has been seen, could not be imputed to plaintiff corporations, and since defendants were aware that plaintiffs were or should have been aware that plaintiffs did not know of Mr. Hersch's conduct, defendants then obtained a termination agreement releasing the defendants from any and all responsibility to plaintiffs. It is not surprising that this jury found the defendants responsible for breach of a fiduciary duty to plaintiffs. The conduct in question certainly occurred during the partnership or joint venture. It is respectfully suggested again that there was neither error of law nor abuse of discretion. Certainly, it has not been demonstrated that any of this court's judgments were the result of partiality, prejudice, bias or ill will.

It is respectfully suggested that this court's denial of a new trial is supported by the record, the law, and justice.

## PLAINTIFFS' APPEAL

Plaintiffs also have appealed, contending that the court's jury instructions were erroneous and that the court erroneously refused to permit plaintiffs' counsel to question a witness concerning a letter from an officer of defendant Monetary. Plaintiffs also appeal contending the court erred in refusing to "grant plaintiffs' post-trial motion to add interest, attorneys' fees, expert fees, and costs to the verdict." Plaintiffs' post-trial motions were denied, hence plaintiffs' appeal.

## LEGAL INSTRUCTIONS

A motion for new trial based upon error in the jury instructions must be considered in light of the entire instructions to make a determination as to adequacy. *Von Der Heide v. PennDOT,* 553 Pa. 120, 718 A.2d 286 (1998); *Strickler v. Huffine; Royal Insurance Co.,* 421 Pa. Super. 463, 618 A.2d 430 (1992); *Linde Enterprises Inc. v. Hazleton City Authority,* 412 Pa. Super. 67, 602 A.2d 897 (1992). The test thus becomes whether the trial court's instruction "fairly and accurately apprises the jury of the relevant concepts . . . ." If it does so, a new trial is not warranted. *Wagner by Wagner v. York Hospital,* 415 Pa. Super. 1, 608 A.2d 496 (1992). The search is, of course, to ascertain, in consideration of the charge as a whole, that there was no "fundamental prejudicial error." *Stewart v. Motts,* 539 Pa. 596, 654 A.2d 535 (1995).

### 1. *Fiduciary Duty*

Plaintiffs take exception to the court's instruction concerning fiduciary duty.[4] This jury, however, found that

---

4. The principal body of this instruction may be found at 5/14/99 N.T. 42-46. Plaintiffs' exceptions to the court's charge may be found at 5/14/99 N.T. 53-59.

defendant did breach a fiduciary duty to the plaintiffs and, therefore, even if the instruction had been erroneous, plaintiffs suffered no prejudice therefrom.

Plaintiffs argue that the court should have instructed the jury that the fiduciary duty includes a duty of disclosure. However, a fair reading of the court's instruction in this regard will indicate that the jury was instructed that the duties arising in this partnership arose from the joint venture agreement, and that the defendant partners owed a duty of good faith to the plaintiffs. Further, the court placed these instructions in the context of a failure "to perform for the partnership's benefit." (5/14/99 N.T. 42-43.) Clearly, Mr. Hersch's conduct was not for the corporation's benefit, since filing fraudulent tax returns could only do serious harm to the plaintiffs and to the joint venture.

The plaintiffs also contend that it was error for the court not to specifically instruct that the fiduciary duty predated the execution of legal documents. What has already been seen is that the context of good faith owed to a partner exists within the partnership. It is clear that the duty must arise from the partnership. But this court did not restrict the jury's consideration of the knowledge gained by defendants to any period of time whether during the joint venture or before it. Further, the trial court specifically instructed this jury concerning the plaintiffs' contention that there was an agreement to enter into this joint venture, and that duties between the parties may arise from such an agreement, and, therefore, predate the execution of the formal joint venture agreement. It certainly does not always predate such an agreement, as plaintiffs suggest. *Snellbaker v. Herrmann,* 315 Pa. Super. 520, 527, 462 A.2d 713, 716-17 (1983); 13 Summary of Pa. Jurisprudence 2d Joint Ventures §19:24; 46

Am.Jur.2d Joint Adventures §35 (1994).[5] It was for the jury to determine whether or not the facts that they found, before and during the joint venture, gave rise to a fiduciary duty. There is no reason here to believe in light of this verdict, that the jury did not find knowledge of wrongdoing before this joint venture, although the verdict is not specific in that regard.

Further, it must be observed that plaintiffs have waived this objection. Following the court's charge, the parties went to sidebar and from the record it does not appear that plaintiffs raised any objection to the court's charge in this regard and certainly there was no specificity to any objection concerning breach of fiduciary duty.[6] Therefore, since the court's instructions, although not using the specific words requested by plaintiffs, did fairly and accurately communicate the applicable law, did leave to the jury appropriately the questions of fact which the jury had to determine, and since the plaintiffs failed to specifically object, it is respectfully suggested the plaintiffs' post-trial motion was properly denied. Further, even if there was error in the court's charge, in light of the verdict, there was no prejudice.[7]

## 2. *Instruction Concerning Expert Testimony*

Plaintiffs argue that the court's instruction concerning expert witnesses was erroneous, suggesting that if the jury found one fact contrary to those facts assumed by the expert, that expert's opinion failed. Regretfully, this

---

5. The court's instruction to the jury may be found at 5/14/99 N.T. 28-29.

6. See pages 416-18 hereof for a discussion of the applicable law.

7. There is nothing in the record or in the verdict of this jury that suggests the jury's verdict was a compromise as plaintiffs suggest. Plaintiffs have not raised that issue on appeal, so it need not be further discussed herein.

is an inaccurate statement of the court's instruction concerning expert testimony.[8] Plaintiffs direct their assault here to an analogy that the trial court shared with the jury in an effort to explain the importance of considering the reasons that an expert gives for his opinion. The analogy involved a child playing with blocks on the living room floor and building a pyramid, and that the child quickly learns that that pyramid is only as firm as the foundation blocks. (5/14/99 N.T. 14.) Plaintiffs in their argument misstate the court's instructions. Nowhere did the court state that if one block failed, the entire opinion failed. Rather, the specific language of the court with respect to that particular analogy was "very quickly, the child realizes that that pyramid is only as firm as the foundation blocks. And the foundation blocks holding up the pyramid of an opinion are the reasons that the expert gives you for that opinion." (5/14/99 N.T. 14.) The foregoing is but one small aspect of the court's instruction concerning expert testimony and a fair reading of that instruction will demonstrate quite simply that it is consistent with the well-established law of this Commonwealth and also consistent with the Pennsylvania Suggested Standard Civil Jury Instructions published by the Pennsylvania Bar Institute. (SJI (CIV) 5.30, 5.31, 5.32, 5.33 and cases therein cited.) The court's instructions in this regard simply reminded the jury that when considering an expert witness' opinion, they must consider also the reasons given for that expert's opinion and to the extent that those reasons fail, then to that extent so may the opinion. It is respectfully suggested that there is no basis in fact, in the record, or in the charge when considered as a whole for a new trial. Further, it is noted that

8. The court's instruction concerning expert testimony may be found at 5/14/99 N.T. 12-16.

plaintiffs raised no specific objection in this regard at trial and, therefore, the matter should be deemed waived.[9]

### 3. *Misrepresentation, Missing Witness and Right of Individual Plaintiffs to Recover*

Plaintiffs, in their concise statement, contend that the court erred in its instructions concerning misrepresentation, in refusing to give a "missing witness" instruction, and in instructing the jury that the individual plaintiffs could not recover in this action. This court does not recall, and this record fails to disclose, any potential witness that was not equally available to all parties in this action. Plaintiffs failed to raise any exceptions in this regard at sidebar, failed to raise, argue and brief any of these matters in their post-verdict motions, and they are raised now for the first time on appeal. Plaintiffs have presented neither argument nor legal theory nor a point in the record where any of these objections or exceptions were raised. These matters should, therefore, be deemed waived pursuant to Pennsylvania Rule of Civil Procedure 227.1(b)1; *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974); *Frank v. Peckich,* 257 Pa. Super. 561, 391 A.2d 624 (1978). Arguments not appropriately developed are waived. *Nimick v. Shuty,* 440 Pa. Super. 87, 100, 655 A.2d 132, 138 (1995); *Smith v. Penbridge Associates Inc.,* 440 Pa. Super. 410, 427 n.12, 655 A.2d 1015, 1024 n.12 (1995); *Gallagher v. Sheridan,* 445 Pa. Super. 266, 665 A.2d 485 (1995).

It is appellant who carries the burden of establishing his entitlement to relief by showing that the trial judge's ruling was erroneous under the law. *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800

---

9. See pages 416-18 hereof for discussion of law as to waiver.

(1984). Where appellant fails to cite any authority in support of a contention, the claim is waived. *Gallagher v. Sheridan, supra; Hercules v. Jones,* 415 Pa. Super. 449, 609 A.2d 837 (1992). An appellate court will decline to address such phantom arguments where an appellant has presented the position without elaboration or citation to case law. Further, the Pennsylvania appellate courts have held that they will not consider a claim which has not been called to the trial court's attention so as to allow a reasonable opportunity to correct the matter. *Dilliplaine v. Lehigh Valley Trust Company, supra,* at 259, 322 A.2d at 116; *Noecker v. Johns-Manville Corp.,* 355 Pa. Super. 463, 513 A.2d 1014 (1986); *Takes v. Metropolitan Edison Co.,* 440 Pa. Super. 101, 107, 655 A.2d 138, 141 (1995) (en banc). Trial counsel carry the responsibility of being diligent and assisting the court in preventing error at the trial court level and allowing any such error that might occur to be corrected. These issues raised, for first time on appeal, should, therefore, be deemed waived. Further, it must be observed that plaintiffs clearly acquiesced to the court's charge in that regard.

The matter of individual right to recover by the individual plaintiffs was discussed at a robing room pre-charge conference and plaintiffs acquiesced in the court's observation that the individual plaintiffs, the directors of plaintiffs' corporations, gained no right independently of the corporations' right to recover. (5/13/99 N.T. 24-26.) Further, there was no exception taken to the court's instructions, in this regard, as hereinabove discussed. Finally, there was no exception taken to the verdict slip which clearly inquires only as to breach of contracts gross negligence, and breach of fiduciary duty as to plaintiffs, RMH Enterprises Inc. and Quik-Tax Dollars Inc. Further, plaintiffs have presented no argu-

ment or law justifying their position. As has hereinabove been discussed, the defendants' duty arises from their relationship with the corporate partners who ultimately entered into the joint venture agreement with the defendants. The individual plaintiffs never did so, nor was there any suggestion at trial that they were parties to this contract, or had any independent dealings in their own right with the defendants. Simply, where the individual plaintiffs acted, they acted solely as corporate officers of the plaintiff corporations.

It is respectfully suggested for the foregoing reasons that there was neither error of law nor abuse of discretion and, therefore, this court properly denied plaintiffs' request for post-verdict relief in this regard.

### 4. *Gross Negligence*

Defendants contend that the court's instructions concerning gross negligence were erroneous.[10] Plaintiffs argue that the court instructed the jury that they must be satisfied that the defendants acted willfully. A fair reading of the court's instructions will indicate that the court instructed the jury as to the concept of negligence and then as to gross negligence. Among other things, this court stated to the jury that:

"Gross negligence consists in a want of even stand[ard] care. Something less than intentional action or intentional indifference to action. But it is an extreme departure from the standard of ordinary conduct. Gross negligence is

___

10. The court's instructions in this regard may be found at 5/14/99 N.T. 39-41. Once again, it must be noted that there was no exception taken to these instructions. Although the subject of gross negligence was raised at sidebar following the main portion of this court's instructions, it was raised in relation to the individual plaintiffs apparently. (5/14/99 N.T. 58.) And, although it is not clear in the transcript, the question related to damages. (5/14/99 N.T. 57.) The matter should thus be deemed waived. See discussion on pages 416-18.

the want of that diligence that even careless men and women are accustomed to exercise under the circumstances in this case." (5/14/99 N.T. 40.)

It is simply inaccurate to suggest that this court required the jury to find anything, particularly that they must find the defendants acted willfully. Indeed, a fair reading of the entire charge will indicate that the jury was instructed accurately and in accordance with the law of this Commonwealth. The instruction does not serve as a foundation for plaintiffs' request for a new trial. Indeed, this court's instruction is consistent with the definition of gross negligence set forth in Black's Law Dictionary, sixth edition, p. 1033, and the court's definition of willful, was likewise consistent with Black's Law Dictionary, sixth edition, p. 1599, but at no time did this court instruct the jury that in order to find gross negligence, the defendants' conduct must be willful or intentional.

## 5. *Interest, Attorneys' Fees, Expert Fees and Costs*

Plaintiffs contend that the jury should have been instructed concerning the award of interest and, further, that this court erred in denying plaintiffs' post-trial motion "to add interest, attorneys' fees, expert fees and costs to the verdict."[11] Plaintiffs contend that they are entitled to pre-judgment interest and that they are entitled to recover attorneys' fees and costs under the terms of the joint venture agreement.

Initially, although the jury did, as plaintiffs observe, find on May 14, 1999 that the joint venture agreement was breached, it also found specifically that the aforesaid breach was not "a substantial factor in bringing about

---

11. Plaintiffs' concise statement of matters complained of on appeal, paragraphs five and seven.

any harm to the plaintiffs. . . ." (Verdict slip entered of record, interrogatory no. 2.) It would not only be incongruous but repugnant to the jury trial system for this court to ignore the jury's findings that the breach caused no harm. Therefore, any instruction concerning pre-judgment interest would have been superfluous since the jury found no legal cause of harm from the breach.

Further, plaintiffs contend that the breach of a fiduciary duty is a tort and, therefore, delay damages may be awarded. However, the award of delay damages is controlled by the Pennsylvania Rules of Civil Procedure, 238(a)(1), which provides:

"At the request of plaintiff in a civil action seeking monetary relief for *bodily injury, death,* or *property damages,* damages for delay shall be added . . . ." (emphasis added)

Clearly, the instant action does not fit within the predicate definition for the recovery of delay damages.

There has never been a dispute in this case concerning the applicability of the joint venture agreement. Both parties agree that they are bound by the terms thereof. Therefore, pursuant to plaintiffs' post-trial motion to award interest, attorneys' fees and costs, this court is compelled to look to that joint venture agreement. *Halpin v. LaSalle University,* 432 Pa. Super. 476, 639 A.2d 37 (1994), *appeal denied,* 542 Pa. 670, 668 A.2d 1133 (1995).

Both parties agree that the award of attorneys' fees and costs is controlled by the joint venture agreement, section 13.4. That provision provides:

"(a) QTV (the parties stipulated that QTV was the same as defendant Monetary) hereby agrees to indemnify, defend and hold harmless the joint venture, RMH and Richard Hersch, from and against any and all claims, losses,

awards, judgments, settlements, fines, penalties, liabilities, damages, costs or expenses, including, without limitation, reasonable attorneys' fees and court costs (collectively, 'losses'), asserted against, incurred by or imposed upon the joint venture, RMH or Richard Hersch which arise out of and to the extent arising out of: (i) the gross negligence and/or willful misconduct of QTV or its officers, directors, employees, agents, affiliates or contractors; . . .

"(b) RMH hereby agrees to indemnify, defend and hold harmless the joint venture and QTV from and against any and all losses, which arise out of and to the extent arising out of: (i) the gross negligence and/or willful misconduct of either or both of RMH or Richard Hersch or the officers, directors, employees, affiliates or contractors thereof; . . . ." [12]

Thus, both plaintiffs and defendants agreed to indemnify the joint venture and each other against the losses defined in the aforesaid paragraph. It makes little sense to require plaintiffs to pay defendants and defendants to pay plaintiffs' costs and attorneys' fees. While the "losses" certainly arose out of "the gross negligence and/or willful misconduct" of Richard Hersch, both plaintiffs and defendants would be entitled to compensation if the agreement were applicable. However, the gross negligence or willful misconduct of Richard Hersch is not something found by this jury and this court should not conclude, based on the self-serving statements of plaintiffs and defendants, without having heard from Richard Hersch in any way, that the contract term requires

12. The parenthetical observation concerning QTV was inserted by this court in light of the agreement entered into by the parties at the outset of this litigation. A complete copy of the joint venture agreement may be found as exhibit "A," appendix in support of Monetary Management Corporation's motion for post-trial relief.

plaintiffs' motion to be granted.[13] Further, there is no argument made by plaintiffs that a breach of fiduciary duty is included within the predicate provisions of this paragraph of the joint venture agreement nor is this court ready to so conclude.

Further, since this jury found that no harm resulted from defendants' breach of the joint venture agreement, plaintiffs would not be entitled to recover damages in the nature of attorneys' fees or costs pursuant to that agreement. Therefore, section 13.4 (ii) does not afford plaintiffs relief in light of this jury's finding. That provision provides that there will be indemnification for only a *breach of the agreement.*

Plaintiffs seek to recover court costs. The joint venture agreement, if it were applicable, does not define that word and therefore, one would look to its ordinary meaning and to Delaware County Rule of Civil Procedure *903, which controls award of costs. *Pines Plaza Bowling Inc. v. Rossview Inc.,* 394 Pa. 124, 145 A.2d 672 (1958); *Volunteer Firemen's Insurance Services Inc. v. CIGNA Property and Casualty Insurance Agency,* 693 A.2d 1330 (Pa. Super. 1997).

Delaware County Civil Rule *903 does not provide for the recovery of deposition expenses, costs of trial exhibits, or expert witness fees as court costs. Plaintiffs have applied for appropriate "court costs" pursuant to Delaware County Court Rule *903 by filing a bill of costs with the Office of Judicial Support in any event. There is no need for a court order. Plaintiffs have provided this court with neither argument nor the citation of authority supporting this contention and, therefore, it should be deemed waived.[14] Normally such costs as plaintiffs seek

---

13. It is conceded that the indictment and conviction of Mr. Hersch clearly indicate willful misconduct.

14. See the law discussed concerning waiver hereinabove at pages 416-18.

are excluded from that which may be taxable against a losing party in Pennsylvania. *Pavex Inc. v. York Federal Savings and Loan Association,* 716 A.2d 640 (Pa. Super. 1998); *Walasavage v. Marinelli,* 334 Pa. Super. 396, 483 A.2d 509 (1984); *Kojeszewski v. Brigantine Castle and Amusement Corp.,* 302 Pa. Super. 500, 449 A.2d 28 (1982); *Harmer v. Horsham Hospital Inc.,* 60 Pa. Commw. 525, 431 A.2d 1187 (1981).

Since plaintiffs are not entitled to recover these items pursuant to the joint venture agreement, or pursuant to local rule, or pursuant to any state authority which this court has been able to locate, it is respectfully suggested that the law, this record and justice required the denial of plaintiffs' motions in this regard and therefore such should not serve as a basis for a new trial.

It is also respectfully suggested that the court's denial of plaintiffs' motion for pre-judgment interest, and the court's denial of plaintiffs' request for instructions thereto, and the court's denial of plaintiffs' request for fees and costs was also consistent with the evidence presented, with the law and with justice. The plaintiffs' motions were appropriately denied in this regard.[15]

It is respectfully suggested that this court's denial of plaintiffs' post-verdict motions was neither an abuse of discretion nor error of law and should not therefore be reversed.

### 6. *Examination Concerning March 31, 1993 Letter*

Plaintiffs contend that the court committed error in refusing to permit plaintiffs' counsel to inquire of the

---

15. It is interesting to note that the jury, during deliberations, had plaintiffs' exhibit 237 setting forth a summary of the elements of plaintiffs' damage claims which included simple interest at the rate of 6 percent. Therefore, one can reasonably conclude that such was considered when this jury entered its award.

witness, Jeffrey Weiss, concerning a letter dated March 31, 1993 reportedly demanding his removal as chief executive officer of defendant Monetary.[16] Plaintiffs' counsel, in fact, did not seek to introduce the letter but rather was apparently intending to inquire whether or not the witness, Jeffrey Weiss, chairman of the board of Dollar Financial Group, previously known as defendant Monetary Management, was aware of the letter's content. (5/13/99 N.T. 3.) Plaintiffs' counsel was inquiring as to whether or not this witness "had just lived through the experience of your own senior officers going to your corporate board to report you?" (5/13/99 N.T. 50.) Plaintiffs offered to show him "documents," presumably the letter of March 31, 1993 referred to in plaintiffs' motions. (See 5/13/99 N.T. 50.) Plaintiffs argue that this question is relevant to the issue of defendants' liability. Plaintiffs suggest that, by virtue of this letter, Mr. Weiss knew that he had a duty to convey knowledge of Mr. Hersch's wrongdoing to RMH. Plaintiffs suggest that it is relevant to the issue of gross negligence.[17]

---

16. Presumably counsel is referring to the questions and sidebar conference that occurs at N.T. May 13, 1999 (the face sheet erroneously suggests June 13) pp. 49-52.

17. It is apparent that there is some confusion in the transcription of these notes of testimony since one set of notes is dated June 13, 1999 purporting to be a transcript of these proceedings. This court assumes that that should be dated May 13, 1999. The N.T. page citations and references have herein been made to that copy. Another transcript of these proceedings properly dated May 13, 1999 is also included in the record and that which has been transcribed is different. The second and thicker, May 13 notes of testimony including this witness' testimony have the objection, which is presumably the point of plaintiffs' exception, beginning at page 115 and ending at 118. The plaintiffs argue, that because Mr. Weiss went through a "similar" experience, he should have known to report the matter to the RMH board.

Finally, it must be observed that plaintiffs' memorandum of law in support of plaintiffs' motions for post-trial relief suggests that the court

That Mr. Weiss may have had an experience where corporate officers were unhappy with him and reported him to the board of directors does not infer that he has knowledge of a duty that when one suspects another corporate officer, such as Mr. Hersch, of wrongful conduct, that such must be reported to the board of directors of plaintiffs. There is nothing in the letter or in plaintiffs' counsels' argument that establishes that this incident made Mr. Weiss aware of some duty which he or defendants had as regards Mr. Hersch's conduct.

Further, this court heard from Martin Enterlin, plaintiffs' expert witness, as to "good corporate practices," which included corporate duty.[18] The court has authority to exclude cumulative evidence. Pennsylvania Rule of Evidence 403. Mr. Weiss was not called as an expert and therefore even if he had an opinion and was allowed to proffer it, as to what the duties of corporate officers may have been, it would have added nothing to plaintiffs' case.

More importantly, the risk of prejudice arising from the letter in question far outweighs any evidentiary benefit therefrom. The letter simply attacks Mr. Weiss and made no mention of Mr. Hersch or the relevant situation involved in the case at bar. There is no foundational evidence suggesting sufficient similarity of these cases or that one experience gives rise to knowledge of an established duty resting upon every corporate officer.

A trial court is granted wide discretion as concerns the admission of evidence. *Micciche v. Eastern Elevator Company,* 435 Pa. Super. 219, 645 A.2d 278 (1994); *Plowman v. Plowman,* 409 Pa. Super. 143, 597 A.2d 701

said the letter was an effort at "character assassination," but nowhere in the two transcripts involving this particular testimony does that phrase appear, even though it might have been an accurate observation.

18. See 5/11/99 N.T. 228-342.

(1991). It is respectfully suggested that the exclusion of the evidence in question was not a manifest abuse of discretion. Also, there is a danger that admission of this evidence could have been potentially misleading or confusing. *Daset Mining Corp. v. Industrial Fuels Corp.,* 326 Pa. Super. 14, 473 A.2d 584 (1984). The jury may very well have misunderstood that there was a broader practice within the defendant corporation of inappropriate or wrongful conduct. Such was not the plaintiffs' theory nor was it an issue in this case. Relevance is, of course, a threshold issue in determining the admissibility of any evidence. *Majdic v. Cincinnati Machine Co.,* 370 Pa. Super. 611, 537 A.2d 334 (1988). Even relevant evidence may be excluded if the court concludes that it would be unfairly prejudicial. Finally, the "character assassination" of the witness, Mr. Weiss, was a very real risk if this collateral issue was permitted to be inserted during the trial.

It is therefore respectfully suggested that this evidentiary ruling was neither error nor an abuse of discretion and should not serve as the foundation for the grant of a new trial.

It is for all of the foregoing reasons that this court denied the plaintiffs' post-trial motions and the defendants' post-trial motions. It is respectfully suggested that such is in accordance with the evidence presented during this trial, the applicable law and the interests of justice.[19]

---

19. The law involving judgment n.o.v. has been reviewed herein at pages 408-410, and the law as it pertains to the grant of a new trial has been discussed hereinabove at pages 410-11.